## GEORGE DUBBS V. THE STATE.

No. 21782. Delivered January 7, 1942.

The opinion states the case.

*Nat Gentry, Jr.,* of Tyler, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is arson. The punishment assessed is confinement in the State penitentiary for a term of two years.

The record discloses that on or about the 17th day of February, 1940, appellant purchased from J. M. Thomas a dwellinghouse located at 509 West 5th Street in the City of Tyler, Texas. The consideration therefor was $1,800.00, payable as follows: Cash, $100.00, and for the remaining $1,700.00 appellant made, executed and delivered his note payable to J. W. Thomas in installments of $15.00 on the first day of each month, beginning with the first day of April, 1940. Appellant moved into the house with his family. He insured it against fire in the sum of $750.00, which was payable to J. W. Thomas, the lien-holder. He also took out some insurance on his household and kitchen furniture. On the night of June 13th a fire was discovered in the house. The fire department was notified and the firemen went immediately to the scene of the fire. They found the doors locked and windows securely fastened down. After breaking into the house, they found an electric smoothing-iron in a cabinet under the kitchen sink, the cord of which was plugged into the wall and connected with the electric current. A great number of loose matches were found lying around and upon the smoothing-iron. Some rags carrying the odor of kerosene oil were also found. The odor of kerosene oil was discovered on an upholstered chair with eight or ten books of matches "stuck around" on the back of the seat. A five-gallon can with

a spout was found in the yard, which also carried the odor of kerosene oil. This can was the one, or similar to the one which had been in use by appellant at his filling-station. A day or two prior to the fire, appellant sent his wife and child to her parents at Joinerville. When she left home, she carried with her two suitcases and some dresses on hangers. About 9:15 or 9:30 o'clock on the night in question, appellant, while at his place of business, was seen to put some kerosene oil and gasoline into a five-gallon can with a spout on it. He then placed the can in a car and drove away in the direction of his home. He was again seen about thirty minutes later when he returned to his place of business. When the fire was discovered in the appellant's home, he was not there. He was found in his filling-station by some one who looked over the transom of the door, flashed a light therein and saw him sitting on a bench in the building.

Appellant did not testify or offer any affirmative defense.

Bill of Exception No. 1 reflects the following occurrence: After Eddie Waller had testified at the instance of the State that he was Captain of the Tyler Fire Department, that he went to the scene of the fire on the night in question and made an investigation for the purpose of discovering the origin of the fire, etc., he was asked on cross-examination by appellant if he knew Miles Smith and knew that he was a representative of the National Board of Fire Underwriters, to which the witness replied that he knew Miles Smith; that he understood that Smith was a representative of the National Board of Fire Underwriters but he did not know that Smith was in Tyler and had made an investigation of this case. Thereupon, appellant propounded to him the further question: "You don't recall whether he was over here investigating this fire and prompted these arson charges to be filed?" The State objected to the question as being improper and not admissible as it did not shed any light on any issue in the case. The court sustained the objection and the appellant then and there excepted. It is apparent from the bill that the witness did not personally know that Smith was a representative of the National Board of Fire Underwriters. The only reasonable inference to be drawn from his testimony is that he had heard it. Neither did he know that Smith made any investigation of the fire and prompted the arson charge to be filed. Consequently there was no error in the court's ruling. It is clear to us that if the witness had given such testimony, it would have been hearsay.

Hence we overrule appellant's contention.

By Bill of Exception No. 2 appellant complains of the testimony given by Clyde Bentley to the effect that after the fire had been extinguished he made a photograph of the kitchen, including the cabinet under the kitchen sink, the ice box, ironing board, floor and walls, which photograph showed the electric smoothing-iron sitting in the cabinet, the electric cord of which was plugged into the wall of the kitchen, thus connecting the iron with the electric current and showed a great number of matches lying upon and around the smoothing-iron. Appellant objected to the introduction of this photograph upon the ground that the witness had no search warrant which authorized him to enter the building and make photographs thereof. The record shows that Bentley arrived at the scene of the fire after the firemen had entered the building and extinguished the fire. The firemen had a legal right to enter the appellant's home while it was on fire and to extinguish it. Public policy not only authorized but required them to do so. Hence they were lawfully upon the premises and whatever incriminating facts or circumstances were discovered by them were admissible in evidence. The Constitution only prohibits an unreasonable search of a citizen's home, but the facts of the present case do not show an unreasonable search of the accused's premises. Mr. Bentley, who had entered the building after the firemen had extinguished the fire, saw the conditions existing in the house and made a photograph thereof which truly reflected the actual conditions which existed in the kitchen and more accurately conveyed to the jury the conditions therein than the witnesses could do by word of mouth. However, two firemen testified without objection on the part of appellant to the same facts as were disclosed by the photograph, showing the condition of the kitchen of the house. In our opinion, the witnesses had a right to state what they discovered in the building, and for the same reason Mr. Bentley could demonstrate by photograph the existing facts which he discovered. See 30 Tex. Jur. p. 136, sec. 66, on the subject of Municipal Corporations.

By Bill of Exception No. 3 appellant complains of the testimony given by Billy Pinkerton, a member of the Police Department of the City of Tyler, to the effect that the fire occurred at 12:20 o'clock midnight; that when he reached the scene of the fire he went around to the garage and storage room on the premises; that he had been to and from the burned build-

ing several times during the night; that about 5:30 o'clock the next morning he found a Magnolia Mobile Oil can in the garage on the appellant's premises which contained what the witness thought was oil and tasted like kerosene. This can was exhibited in the presence of the jury. Appellant objected to this procedure on the ground that the witness had no search warrant to search his private residence and any evidence discovered as a result thereof was inadmissible. The objection was overruled and appellant excepted. This bill is qualified by the court who states in his qualification that at the time the oil can was discovered the fire chief and other firemen were still on the premises; that a watchman had been placed in charge of the premises by the fire department who was in charge thereof at all times since the fire was first reported. We are of the opinion that the firemen, as well as the policemen, had the right to enter the premises at any and all times after the fire was discovered because public policy required them so to do. Therefore, whatever they discovered while on the premises would be admissible as a circumstance to establish the origin of the fire.

In 18 Tex. Jur., p. 405, sec. 280, the rule is stated as follows:

"The use of photographs in evidence is to 'identify persons, places and things; to exhibit particular localities or places, where it is important that the jury should have a clear idea thereof, and the situation may thus be better indicated than by testimony of witnesses; or where they will conduce to a better or clearer understanding of such testimony.' * * * In short, photographs are a species of demonstrative evidence."

Bill of Exception No. 4 relates to what Henry L. Ginn did when he reached the scene of the fire and what he found in the storage room in connection with the garage. Appellant objected to this testimony upon the ground that he (Ginn) had no search warrant. The court qualified this bill and in his qualification states that Mr. Ginn, Chief of the Fire Department, had gone upon the premises while the house was burning and while the firemen were endeavoring to extinguish the fire; that he discovered the back doors were latched; that the firemen were still upon the premises with their equipment at the time the oil can was discovered which was introduced in evidence. We are of the opinion that what we have said in disposing of Bills Nos. 2 and 3 also disposes of Bill No. 4.

Bill of Exception No. 5 complains of the action of the trial court in overruling appellant's motion for a new trial based upon the ground that he did not receive a fair and impartial trial by a fair and impartial jury in this, that at least one member of the jury had formed and expressed an opinion as to the defendant's defense in this case and was prejudiced against him; that the defendant's attorney questioned all members of the jury panel and the juror stated that he had formed no opinion, had not prejudiced the case and knew of no reason why he could not give appellant a fair and impartial trial. The court heard testimony relative to the complaints urged in the motion and decided the issue adversely to appellant. However, it appears from the record that a week or ten days prior to this trial the defendant's case was called; that he appeared in court and after the selection of the jury he arose and stated to the court that he had discharged his attorney; that he wanted the court to discharge the jury and quash the indictment. His conduct was such that the court deemed it necessary to order a mistrial, discharge the jury and hold appellant in contempt of court and assessed his punishment at confinement in the county jail for a period of three days and a fine of $100.00. It seems that some of the jurors who finally sat upon the trial had heard of this procedure and were questioned relative thereto, as well as juror Cook; that they all answered that from what they had heard they had no prejudice against the appellant and had formed no opinion as to his guilt; that they could give him a fair and impartial trial. It was further shown that after the jurors retired to consider their verdict, the first thing they did was to select a foreman, who then called for a vote as to the guilt or innocence of the defendant; that before the vote was taken some of the jurors asked that the charge of the court be read by the foreman, which was done, and then, without any discussion of any of the prior proceedings, the jurors voted unanimously on the question of the appellant's guilt. They next voted on the amount of the punishment, which they assessed at two years' confinement in the penitentiary; that when this was done, the foreman wrote out the verdict and signed it, which they immediately returned into court; that the whole procedure did not require more than thirty minutes. Under these facts, we do not believe that appellant has made such a showing of misconduct or prejudice on the part of the jury or any member thereof as would require a reversal of the judgment.

From what we have said, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.