Gerald Lee **BODDE** alias Jerry **Cannon**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 58337.

Court of Criminal Appeals of Texas, En Banc.

June 14, 1978.

Rehearing En Banc Denied July 12, 1978.

Frank M. Sheppard, Jr., court appointed, Marvin O. Teague, court appointed, Houston, for appellant.

Carol S. Vance, Dist. Atty., Michael Kuhn and George Jacobs, Asst. Dist. Attys., Houston, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of capital murder; the punishment is death.

Forty-seven grounds of error are presented; however, twenty-five grounds of error are unsupported by argument and authority. See Art. 40.09, Sec. 9, V.A.C.C.P. We will consider some of the unbriefed grounds of error in the interest of justice. Art. 40.09, Sec. 13, V.A.C.C.P. In those grounds of error which have been briefed appellant's contentions concern the constitutionality of the capital murder statutes and the manner in which the death penalty was imposed; jury selection; the restriction of voir dire examination; the court's failure to sua sponte declare a mistrial when a juror who had been empaneled revealed that he previously had been convicted of a felony; the court's charge on circumstantial evidence at the punishment stage of the trial; and the sufficiency of the evidence in regard to punishment.

It is alleged that appellant, on or about January 4, 1975, intentionally caused the death of Bernice Hartsfield by hitting, beating, and striking her with a pipe and with an unknown instrument while in the course of committing robbery.

On the afternoon of January 3, 1975, appellant kidnapped Roberta Dodd, the six-year-old daughter of Mrs. Jean Dodd. Appellant previously had dated Mrs. Dodd and had shared an apartment with her and her three children for several months. The next day appellant talked to Mrs. Dodd by telephone and demanded $1,000 ransom for her daughter; Mrs. Dodd then contacted officers of the Houston Police Department, and they established electronic surveillance on her telephone. Appellant called Mrs. Dodd again on January 5 and repeated his ransom demand; he also told her that if she notified the police he would "send Roberta home in a pine box." Appellant called again on January 6 and instructed Mrs. Dodd to bring the money to a fast food restaurant in Houston where she would be met by a third party.

Mrs. Dodd followed appellant's instructions; after telephone calls from appellant and a conversation with a third party whom appellant instructed her to meet at a nearby apartment, she met appellant outside the apartment complex. Appellant told Mrs. Dodd that her daughter had witnessed a murder, "and if I can kill an old lady, I can kill a child." After talking with Mrs. Dodd for approximately twenty minutes concerning the return of Roberta and payment of the ransom, appellant was arrested by officers who were hiding in one of the apartments at the complex. Appellant was carrying a pistol. Appellant subsequently led officers to an apartment in San Antonio where Roberta Dodd was found.

The car which appellant was driving when he was arrested was registered to the deceased, in whose home the appellant had been a tenant. Non-negotiable bonds and credit cards in the deceased's name as well as diamond rings belonging to her were found in the apartment which the appellant had rented in San Antonio. Appliances and clothing belonging to the deceased were found in her car. The deceased's body was found wrapped in a quilt and tied with electrical cord in a closet of her home. An autopsy revealed that her death was caused by multiple fractures of the skull, compatible with having been struck repeatedly by a blunt instrument.

A. E. Jackson, the attorney of the deceased, testified that he was present at her home on the morning of January 3, 1975, to discuss the revision of her will; bonds worth $12,000 belonging to the deceased were lying on the kitchen table during the discussion. Appellant entered the kitchen,

and he and Jackson were introduced. The deceased, who was eighty-one years old, left an estate of $789,000.

■ Appellant concedes that the same contentions that he has raised regarding the constitutionality of the Texas death penalty statutes have been decided adversely to him. See *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App. 1975), affirmed, *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Brock v. State*, 556 S.W.2d 309 (Tex.Cr.App. 1977); *Gholson v. State*, 542 S.W.2d 395 (Tex.Cr.App. 1976). We adhere to our previous disposition of these contentions. Appellant also attacks the statutory scheme for capital punishment on a basis that this Court has not had occasion to decide. He argues that appellant was deprived of due process because he could not testify at the punishment hearing and admit his guilt without waiving error that occurred during the guilt stage of the trial. See *Downey v. State*, 505 S.W.2d 907 (Tex.Cr.App. 1974); *Boothe v. State*, 474 S.W.2d 219 (Tex.Cr.App. 1972). We cannot say that this common-sense rule of procedure denied appellant due process of law.

■ Appellant also contends that capital punishment is wantonly or freakishly imposed in Harris County because the decision whether to seek the death penalty is made by the district attorney, who acts without written guidelines. He argues that the prosecutorial discretion in deciding whether to seek the death penalty is unfettered, and therefore impermissible. In short, appellant's complaint is that the prosecutor may decide not to seek the death penalty in some cases in which it arguably could be imposed. In rejecting a similar contention in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court reasoned as follows:

"[T]he petitioner . . . notes that the state prosecutor has unfettered authority to select those persons whom he wishes to prosecute for a capital offense and to plea bargain with them . . . The existence of these discretionary stages is not determinative of the issues before us. At each of these stages an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty . . . Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution."

See *Jurek v. Texas*, supra; *Franklin v. State* (No. 57,348, decided May 24, 1978); *Livingston v. State*, 542 S.W.2d 655 (Tex. Cr.App. 1976).

Appellant contends that this state's statutory scheme for the selection of jurors in a capital case, see Arts. 35.15, 35.17, 37.071, V.A.C.C.P.; V.T.C.A. Penal Code, Sec. 12.-31(b), does not comport with the constitutional requirements of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). This question has been resolved adversely to appellant's contention. *Hovila v. State*, 532 S.W.2d 293 (Tex.Cr.App. 1975); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App. 1977), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294; *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App. 1976). Appellant also urges that eight venire members were improperly excluded from the jury.

■ Appellant concedes that venire members Kattie Mae Thomas, Ira Fay, Frances Dove, and Louis Williams were or "may very will have been" disqualified under *Witherspoon*, but argues that they were improperly excluded because they were not shown to have been disqualified under V.T. C.A. Penal Code, Sec. 12.31(b). In a capital murder case, a prospective juror may be disqualified under either *Witherspoon* or Sec. 12.31(b) or both. *Franklin v. State*, supra; *Brock v. State*, supra; *Moore v. State*, supra. A prospective juror who is disqualified under *Witherspoon* need not be disqualified or even questioned under Sec. 12.31(b). *Franklin v. State*, supra; *Brock v. State*, supra. Conversely, a prospective juror who is disqualified under Sec. 12.31(b) need not be disqualified or questioned under *Witherspoon*. *Franklin v. State*, supra; *Hughes v. State*, 562 S.W.2d 857 (Tex.Cr. App. 1978); *Hughes v. State*, 563 S.W.2d 581 (Tex.Cr.App. 1978); *Burns v. State*, supra; *Moore v. State*, supra.

These four venire members testified that under no circumstances could they vote to return a verdict which would result in the imposition of the death penalty. They were disqualified under *Witherspoon*. Prospective jurors Thomas and Fay also testified that knowing that death was a possible punishment would affect their deliberations. They were disqualified under Sec. 12.31(b) as well.

Clifford Minor testified that under no circumstances could he vote to return a verdict that would result in the imposition of the death penalty. He was disqualified under *Witherspoon*.

Bobbie Thompson testified that under no circumstances could she vote to return a verdict that would result in the imposition of the death penalty; she also testified that knowing that death was a possible penalty would affect her deliberations. She was disqualified under *Witherspoon* and Sec. 12.31(b). The appellant's counsel did not question Thompson on voir dire.

■ Jan Elizabeth Scott testified repeatedly and unequivocally that in answering the second question at the punishment hearing, Art. 37.071(b)(2), V.A.C.C.P., she would hold the State to a more stringent standard of proof than that required by the statute, "beyond a reasonable doubt." She was properly excluded for cause under Art. 35.15(b)(3), which provides for the exclusion of a venire member who "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." See *Chambers v. State*, 568 S.W.2d 313 (Tex.Cr.App.1978); *Moore v. State*, supra; *Cherry v. State*, 488 S.W.2d 744 (Tex.Cr.App.1972), cert. denied 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199.

■ Barbara Teter testified that she had had a nervous breakdown approximately eighteen months previously, at which time she was hospitalized for four months and given shock treatments. She expressed serious reservations about her ability to serve as a juror and testified that if she were selected as a member of the jury and the jury were sequestered, she might again experience emotional problems. The court excused Teter on its own motion. When the prospective juror was not challenged for cause by the State, the court should not have excused her on grounds which did not show an absolute disqualification. See Art. 35.19, V.A.C.C.P.; *Valore v. State*, 545 S.W.2d 477 (Tex.Cr.App. 1977); *Moore v. State*, supra; *Henriksen v. State*, 500 S.W.2d 491 (Tex.Cr.App. 1973). The venire member certainly would have been subject to a challenge for cause under Art. 35.-16(a)(4) on the ground that she had "such bodily or mental defect or disease as to render [her] unfit for jury service . . ." Appellant has not shown how he was harmed by the exclusion of Teter nor has he established that he was tried by a jury to which he had a legitimate objection. See *Valore v. State, supra; Moore v. State, supra; Henriksen v. State, supra*. Moreover, when the venire member was excused, appellant merely excepted to the court's ruling and did not object, as he does on appeal, that the venire member was not challenged for cause. Nothing is presented for review. See *Moore v. State*, supra.

Appellant complains that the court erred in restricting his voir dire examination of prospective jurors Clifford Minor and Darlene Weddle. The record reflects that counsel for appellant questioned Minor extensively, that the court in no way restricted the voir dire examination of Minor, and that appellant made no trial objection that his voir dire examination of Minor was improperly limited. Appellant's ground of error as to venire member Minor is not supported by the record and is wholly without merit.

■ Venire member Weddle stated that in no case in which a defendant was found guilty of first degree murder (a lesser included offense of the offense of capital murder, for which appellant was prosecuted) could she assess the minimum punishment, imprisonment for five years. The court properly sustained the State's challenge for cause. See Art. 35.16(b)(3), supra; *Chambers v. State*, supra; *Moore v. State*,

supra; *Cherry v. State,* supra. Appellant contends that the court erred in refusing his request to question Weddle after she had been disqualified. The trial court may impose reasonable restrictions on the exercise of voir dire examination. See *Emanus v. State,* 526 S.W.2d 806 (Tex.Cr.App. 1975); *Smith v. State,* 513 S.W.2d 823 (Tex.Cr.App. 1974); *Lewis v. State,* 488 S.W.2d 740 (Tex. Cr.App. 1973); *McCarter v. State,* 478 S.W.2d 524 (Tex.Cr.App. 1972). Duplicitous questions may, within the court's discretion, be limited to curb the prolixity of what can become the lengthiest part of a criminal proceeding. (Transcription of the voir dire examination required more than *five thousand* legal size pages in the instant case.) See *Smith v. State,* supra; *Cook v. State,* 398 S.W.2d 284 (Tex.Cr.App. 1966).

■ Weddle stated unequivocally several times that she never could assess the minimum punishment for first degree murder. The venire member having shown beyond any doubt that she was disqualified, the court did not abuse its discretion in refusing to allow her to be questioned further. See *Ortega v. State,* 462 S.W.2d 296 (Tex.Cr. App. 1970); *Smith v. State,* supra.

Even though there was no trial objection, appellant insists that the court erred in failing to grant a mistrial on its own motion when it was revealed that a juror was a convicted felon. Joe E. Howard was the second juror selected. After being sworn, he was excused by the court until the remainder of the jury was chosen. Eleven days later, after three additional jurors had been selected, Howard advised the court that he previously had been convicted of a felony, a fact which he had not disclosed before he was selected as a juror. Howard subsequently appeared in court, and counsel for appellant and the State, as well as the court, questioned him concerning his conviction and his failure to disclose it during voir dire examination. He then was excused without objection.

■ Since Howard was absolutely disqualified from serving as a juror, Art. 35.-16(a)(2), V.A.C.C.P., the court properly excused him. *Burton v. State,* 129 Tex.Cr.R.

234, 86 S.W.2d 768 (1935). Appellant contends that the court should have declared a mistrial on its own motion and excused all those jurors who had been selected, because Howard had "tainted" and rendered void the entire proceedings before he was excused. We do not agree. Howard heard no evidence in the trial of the case; he was instructed by the court when he was selected not to discuss the case. We are unable to discern how he tainted the proceedings in any way or how appellant was harmed by the court's failure to discharge those jurors who already had been selected. See *Perbetsky v. State,* 429 S.W.2d 471 (Tex.Cr. App. 1968); *Black v. State,* 46 Tex.Cr.R. 590, 81 S.W. 302 (1904).

Appellant insists the court at the punishment phase of the trial improperly refused his requested charge on circumstantial evidence regarding the two questions under Art. 37.071(b), supra. The court instructed the jury that the State was required to prove beyond a reasonable doubt that affirmative answers should be given to the two questions on punishment, and also instructed the jury as follows:

"In this case the State relies upon circumstantial evidence for affirmative answers to each of the foregoing Special Issues. In order to warrant such answer on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt; all the facts (that is the facts necessary to the conclusion) must be consistent with each other and with the main facts sought to be proved; and the circumstances taken together must be of a conclusive nature, leading on the whole, to a satisfactory conclusion and beyond a reasonable doubt that the Special Issue should be answered 'Yes', and unless they do so beyond a reasonable doubt, you must resolve that doubt in the defendant's favor and answer the Special Issue 'No'."

■ A circumstantial evidence charge is not required on every facet of a case that is supported by circumstantial evi-

dence. *Franklin v. State*, supra; *Shippy v. State*, 556 S.W.2d 246 (Tex.Cr.App. 1977). Such a charge is required only when circumstantial evidence is used to prove the culpable act, which is a matter of objective historical fact; proof of *mens rea*, a psychologic fact, does not require the charge. Since deliberation and expectation (which the State is required to prove regarding the punishment questions) arise from internal psychologic processes, no charge on circumstantial evidence at the punishment hearing is required. *Franklin v. State*, supra; see *Shippy v. State*, supra; *King v. State*, 553 S.W.2d 105 (Tex.Cr.App. 1977). The court's charge, which was submitted to the jury before our decision in *Shippy v. State*, supra, exceeded that to which appellant was entitled.

Appellant also urges that the court improperly restricted voir dire examination by prohibiting him from questioning the prospective jurors concerning the court's charge on circumstantial evidence at the punishment stage of the trial. Since appellant was not entitled to such a charge, the court did not err in so limiting the voir dire examination. See Art. 35.17, V.A.C.C.P.

█ Appellant's final contention is that the evidence is insufficient to sustain the jury's findings that his conduct was deliberate and that there was a probability he would commit criminal acts of violence that would constitute a continuing threat to society. Art. 37.071(b)(1), (2), supra. Evidence adduced at the guilt phase of the trial showed that appellant killed the deceased, an 81-year-old widow who had rented him a room in her home, by bludgeoning her with a blunt instrument while robbing her. The deceased's skull was crushed, and her death was caused by bits of bone becoming embedded in her brain. It also was shown that appellant had kidnapped the six-year-old daughter of a woman with whom he once had lived and had threatened to kill the little girl if his ransom demand of $1,000 was not met. Appellant was carrying a pistol when he was arrested.

At the punishment stage of the trial, the State introduced evidence that appellant had been convicted of theft and bigamy. Five witnesses testified that appellant's reputation for being a peaceful and law-abiding citizen was bad. The evidence is sufficient to support the jury's determination that appellant's conduct was deliberate and that appellant would commit criminal acts of violence that would constitute a continuing threat to society. See *Felder v. State*, 564 S.W.2d 776 (Tex.Cr.App., decided April 26, 1978); *Brock v. State*, supra; cf. *Warren v. State*, 562 S.W.2d 474 (Tex.Cr. App. 1978).

Likewise, we find the evidence adduced at the guilt stage of the trial, as discussed in this opinion, supra, sufficient to sustain the conviction. The cumulative force of the incriminating circumstances was sufficient for the jury to find appellant guilty of murder while in the course of committing robbery.

We now shall consider several matters in the interest of justice. Art. 40.09, Sec. 13, V.A.C.C.P.

█ Roberta Dodd, who was six years old when she was kidnapped by appellant and seven years old at the time of trial, was called as a witness outside the presence of the jury. She took the stand on several occasions and, despite prolonged questioning by the court as well as the prosecutor, would not answer questions. The court ruled the child incompetent as a witness. Art. 38.06(2), V.A.C.C.P. The court then allowed an assistant district attorney to testify before the jury concerning the State's attempts to qualify the witness and her refusal or inability to testify. Since the child had been kidnapped before the deceased was killed, and appellant had stated to her mother that the child was present during the commission of the murder, the child was a material witness. The court acted properly in allowing the State to explain its failure to produce the child as a witness. See *Green v. State*, 167 Tex.Cr.R. 272, 320 S.W.2d 818 (1958); *Martinez v. State*, 165 Tex.Cr.R. 244, 306 S.W.2d 131 (1957); *Chandler v. State*, 157 Tex.Cr.R. 353, 248 S.W.2d 736 (1952). *United States v. Malizia*, 503 F.2d 578 (2d Cir. 1974), cert.

352

denied, 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 843; *United States v. McCaskill*, 481 F.2d 855 (8th Cir. 1973); *Schumacher v. United States*, 216 F.2d 780 (8th Cir. 1954), cert. denied, 348 U.S. 951, 75 S.Ct. 439, 99 L.Ed. 743; 2 Wigmore, Evidence, Sec. 290 at p. 178 (3d ed. 1940).

We also observe that appellant objected to the court's charge because it failed to submit to the jury the question of whether a common law marriage existed between appellant and Mrs. Dodd, in which case she would have been incompetent to testify. Art. 38.11, V.A.C.C.P.

A claim of common law marriage is closely scrutinized by the courts. *Chatman v. State*, 513 S.W.2d 854 (Tex.Cr. App. 1974); *Krzesinski v. State*, 169 Tex. Cr.R. 178, 333 S.W.2d 149 (Tex.Cr.App. 1960); *Welch v. State*, 151 Tex.Cr.R. 356, 207 S.W.2d 627 (1948). There are three elements which are essential to establish such a marriage; (1) an agreement to become husband and wife; (2) cohabitation pursuant to that agreement; and (3) a holding-out of each other to the public as husband and wife. *Chatman v. State*, supra; *Archie v. State*, 511 S.W.2d 942 (Tex.Cr. App. 1974). The agreement of marriage should be specific on both sides. *Chatman v. State*, supra; *Krzesinski v. State*, supra; *Welch v. State*, supra. Although the better view is that such issues should be decided by the trial judge, see 9 Wigmore, Evidence, Secs. 2549–50 (3d ed. 1940), prior decisions of this Court dictate that this issue, when raised by the evidence, be submitted to the jury. *Shields v. State*, 402 S.W.2d 761 (Tex.Cr.App. 1966); *Krzesinski v. State*, supra; *Welch v. State*, supra. In the case at bar, there is no evidence of any agreement between appellant and Mrs. Dodd to become husband and wife. Moreover, the record reflects that Mrs. Dodd still was married to Mr. Dodd at the time she was living with appellant, and consequently she and appellant could not have entered into a valid marriage agreement. *In re Greathouse's Estate*, 184 S.W.2d 317 (Tex. Civ.App.—San Antonio 1944, no writ). Accordingly, the court did not err in refusing to submit that issue to the jury.

We also shall discuss the lawfulness of the searches of appellant's person, the car he was driving when he was arrested, and the apartment in San Antonio. When appellant was arrested he was searched, and a .32 caliber pistol and a set of keys were seized. The search of appellant was conducted incident to his arrest and did not exceed the permissible scope for such a search. See *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Tarpley v. State*, 565 S.W.2d 525 (Tex.Cr. App., decided May 10, 1978). The court did not err in admitting these items in evidence.

After appellant was arrested he directed officers to a car parked nearby which he said he had been driving. The car belonged to the deceased, and a subsequent search of it disclosed several items of the deceased's personal property. Since appellant did not own the car and was not in possession of it when it was searched (the officers having taken custody of it for its rightful owner), the appellant lacked standing to contest the search. Presented with similar facts, another court said:

"In the present case, the court refuses to allow petitioner standing to challenge the search of an automobile, which petitioner was in possession of only by reason of the murder he committed."

*Meade v. Cox*, 310 F.Supp. 233 (W.D.Va. 1970), affirmed 438 F.2d 323 (4th Cir.), cert. denied, 404 U.S. 910, 92 S.Ct. 234, 30 L.Ed.2d 182. See also *United States v. Ankrom*, 446 F.2d 1402 (5th Cir. 1971); *United States v. Kucinich*, 404 F.2d 262 (6th Cir. 1968); *Rodgers v. United States*, 362 F.2d 358 (8th Cir. 1966), cert. denied, 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454.

Bonds and rings belonging to the deceased, which were found in the apartment appellant rented in San Antonio, were admitted in evidence. They were discovered by appellant's landlady, who entered the apartment after he had been arrested so that she could prepare it for a new tenant. Since she was not a law enforce-

ment officer or acting as the agent of law enforcement officers, her actions were not subject to the Fourth Amendment prohibition against unreasonable searches and seizures. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Gaines v. State*, 95 Tex.Cr.R. 368, 251 S.W. 245 (1922); *United States v. Knox*, 458 F.2d 612 (5th Cir. 1972); *Barnes v. United States*, 373 F.2d 517 (5th Cir. 1967). We do not understand Art. 38.23, V.A.C.C.P., to render inadmissible the items seized by appellant's landlady. Since she was rightfully on the premises, whatever incriminating facts or circumstances were discovered by her were admissible. See *Parsons v. State*, 160 Tex. Cr.R. 387, 271 S.W.2d 643 (Tex.Cr.App. 1953), cert. denied, 348 U.S. 837, 75 S.Ct. 36, 99 L.Ed.2d 660; *Dubbs v. State*, 143 Tex. Cr.R. 82, 157 S.W.2d 643 (1942).

The record shows that appellant's trial was fair, that he was represented by experienced, appointed counsel, and that he was afforded all of his constitutional rights. Given the facts surrounding the brutal killing for which appellant was convicted, and his background, we cannot say that the severe penalty which was assessed is inappropriate.

The judgment is affirmed.

ROBERTS and PHILLIPS, JJ., concur in result.