NO. 07-07-0148-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 29, 2009
_____

STACY L. CONNER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-413481; HONORABLE CECIL G. PURYEAR, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Stacy Conner appeals from his conviction for aggravated robbery and the resulting life sentence. Through five points of error, appellant contends the trial court erred in overruling his motion to suppress and asserts the evidence presented at trial was factually insufficient to support his conviction. We affirm.

Factual and Procedural Background

Through an August 2006 indictment, appellant was charged with two counts of aggravated robbery.[1]  The indictment also included an enhancement paragraph setting forth appellant's prior final felony conviction.[2]  Appellant filed a motion to suppress, which the trial court denied after a hearing.  Appellant thereafter entered a plea of not guilty, and the case proceeded to trial before a jury.

Evidence showed that in May 2006, appellant rented a commercial storage unit on Ash Avenue, just outside the south city limits of Lubbock.  Because he had lost possession of his Lubbock residence, he moved all its contents to the unit.  Although he paid the security deposit and the rent for May when he rented the unit, he did not sign the facility's rental agreement and did not pay further rent.

Photographs of the commercial facility show a large metal building divided into several units, each having both a standard door and an overhead door.  In his testimony, the facility's property manager most often called the units "warehouses."[3] Both appellate briefs refer to them as storage units, a term also commonly used during testimony.

---

[1] See Tex. Penal Code Ann. § 29.03 (Vernon 2003).  This is a first degree felony punishable by imprisonment in the institutional division for life or for any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000.  Tex. Penal Code Ann. § 12.32 (Vernon 2003).

[2] See Tex. Penal Code Ann. § 12.42 (Vernon 2007).

[3] The property manager said, "They're commercial shops, they're commercial warehouses. It's for running businesses out of. The size unit [appellant] was in was a 1500 square foot unit. It did have a bathroom in there, but it's not for living in. It was actually a commercial shop to run a business out of."

It is undisputed appellant began living in the unit. He testified as much at the suppression hearing. The property manager testified he discovered appellant was living in the unit in mid-May, and told appellant he could not live there. He testified appellant also failed to arrange for electric utility service to his unit, causing the facility to be billed for the electricity he used. Sometime in June, the facility padlocked appellant's unit because of his failure to pay rent and his improper use of the unit. When appellant broke into the unit, the manager called the sheriff's department. The facility began eviction proceedings, which were still pending at the time of the events that led to appellant's robbery conviction.

The manager of a Lubbock pizza restaurant testified he was alone in the restaurant in the late evening of July 16, 2006, when he was approached by a white male wearing dark clothing, gloves and a ski mask. The intruder pointed a handgun at the manager and demanded money. Initially thinking the demand was a prank, the manager told the robber to leave. The robber shot him, the bullet passing through the manager's thigh. When the manager told the robber he could not open the restaurant's safe, the robber holstered the gun and pulled out a large knife, still demanding money. The robber left after the manager refused his instruction to get on the floor. The manager went next door and police were called. He was taken to a hospital for treatment of his gunshot wound.

Evidence police collected at the scene included a spent .32-caliber brass shell casing. Other witnesses provided the description and license plate number of a white four-door Chevrolet Lumina they saw parked near the restaurant while the robbery was occurring. They testified they saw a man wearing a ski mask get in the car, and that the car also contained a female passenger. The witnesses provided general descriptions of

3

the man.[4] The next night, July 17, police located the white Lumina, appellant and his female companion Kristina Standke at appellant's storage unit. Appellant denied any knowledge of the robbery and refused to consent to a search of the unit.

The next day, July 18, appellant was arrested on a warrant for an unrelated offense, driving the white Lumina. Standke was with appellant when he was arrested. On July 19, she gave a written statement to a police detective. In the statement, she identified herself as the female passenger in the white Lumina when it was seen at the time of the robbery. Her statement was to the effect that appellant told her to stay in the car, and he returned shortly wearing a ski mask. She denied any knowledge of a robbery or a shooting. The statement recited that she had seen appellant with a small black gun about six months before.

Standke's statement indicated she had dated appellant for some eighteen months, and contained these sentences, "I have been living with [appellant] for about a week. We have been living at a storage building on Ash Ave." Standke also signed a written consent to search of the storage unit. Officers conducted their search that afternoon. They found bullets like the spent shell found at the pizza restaurant, and found a knife that matched the description of the one the robber used to threaten the restaurant manager.

---

[4]The robber was described as a white male, six feet, three inches tall, weighing 170 pounds, with an average build.

The property manager of the storage facility also was present while police were there. He approached the officers, telling them he wanted possession of the unit because an eviction hearing was scheduled for July 24. On July 20, he and a facility maintenance employee entered the unit to prepare to clean it out. The maintenance employee found a handgun, ski mask and gloves inside a leather bag, which the property manager turned over to police. A State expert witness testified tests showed the .32-caliber shell found at the pizza restaurant was fired from the handgun the maintenance employee found.

Appellant testified at trial. He maintained he was asleep in his storage unit at the time of the robbery.

Appellant's motion to suppress sought the exclusion of the evidence found during the police search of the storage unit on July 19 and that found by the facility employees on July 20. The trial court denied the motion after a pretrial hearing at which the property manager and the police detective testified for the State, and appellant and Standke testified for the defense.

The indictment charged appellant with the aggravated robbery in two counts, one alleging his use of a firearm as a deadly weapon, the other alleging his use of a knife as a deadly weapon. The court's charge, however, presented to the jury only the count alleging use of the firearm. The jury found appellant guilty and assessed punishment at life imprisonment. Appellant's counsel timely filed a motion for new trial that was overruled by operation of law. This appeal followed.

5

Analysis

*Suppression Issues*

By appellant's first four points of error, he contends the trial court reversibly erred by denying his motion to suppress the evidence obtained during the warrantless searches of his storage unit. A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). A bifurcated standard of review is applied to a trial court's ruling on a motion to suppress evidence. This standard of review gives almost total deference to the trial court's determination of historical facts and applies a *de novo* review of the trial court's application of the law to those facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The trial court is the sole trier of fact, the judge of witness credibility, and the determiner of the weight given to witness testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).

When the trial court does not make explicit findings of fact in ruling on a motion to suppress evidence, appellate courts "review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record." *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App. 2007), *quoting Ford v. State,* 158 S.W.3d 488, 493 (Tex.Crim.App. 2005).

Appellant's first point of error challenges the legality of the July 19 police search of the storage unit based on Standke's consent. By his second, third and fourth points, he challenges the admissibility of the evidence found by the facility employees on July 20.

6

Because the evidence found by the facility employees was the more damaging to appellant, we begin with his points of error challenging that evidence.

*Points of Error Two and Three - Facility Employees' Search of Storage Unit*

The Fourth Amendment to the United States Constitution and article one, section nine of the Texas Constitution protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9. According to the federal exclusionary rule, evidence obtained in violation of the Constitution is inadmissible at trial against a criminal defendant. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

By appellant's second point of error, he contends the evidence found by the facility employees on July 20 should have been excluded because it was fruit of the July 19 police search, which he contends was illegal. He cites *Brown v. Illinois*, 422 U.S. 590, 602-03, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) in support of his contention. Those cases, however, involved searches conducted by government agents. *Brown,* 422 U.S. at 602-03; *Wong Sun,* 371 U.S. at 485-86. Neither the Fourth Amendment nor the Texas Constitution requires exclusion of incriminating evidence obtained by a private citizen's illegal search. *Cobb v. State*, 85 S.W.3d 258, 270-71 (Tex.Crim.App. 2002); *see Walter v. United States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (wrongful seizures by private individuals do not invoke the Fourth Amendment or its exclusionary rule and thus such illegally obtained evidence is admissible in criminal proceedings); *United States v.*

7

*Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (state action is required before Fourth Amendment is implicated). *See also Miles v. State,* 241 S.W.3d 28, 34 (Tex.Crim.App. 2007) (recognizing same). Unless appellant is correct that the facility employees were acting as agents of the government, no constitutional right is implicated in their search of the storage unit.

By his third point, appellant argues the facility employees were acting at the behest of or as agents of the police when they conducted their July 20 search, so that their actions are imputed to the police. *See Morrow v. State*, 757 S.W.2d 484, 489 (Tex.App.–Houston [1st Dist.] 1988, pet. ref'd) ("government may not encourage conduct by private persons that the government itself cannot do"). Reviewing the trial court's ruling here, we will use the factors other Texas courts have applied in similar cases when determining whether a person is acting privately or as an agent of the State: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the person intended to assist law enforcement efforts or instead to further his own needs. *Dawson v. State,* 106 S.W.3d 388, 392 (Tex.App.–Houston [1st Dist.] 2003, no pet.); *Woods v. State,* 970 S.W.2d 770, 774 (Tex.App.–Austin 1998, pet. denied); *see Carroll v. State*, 911 S.W.2d 210, 220 n.5 (Tex.App.–Austin 1995, no pet.) (mentioning same factors).[5] Such an analysis is made on a case-by-case basis in light of all the circumstances. *Dawson,* 106 S.W.3d at *392.* The

---

[5] The Fifth Circuit sometimes has applied a slightly different test that includes the inquiry whether the government has offered the private party some form of compensation for the search. *See United States v. Dahlstrom*, 180 F.3d 677, 682 (5th Cir. 1999). Applying that test would not lead to a different result in this case.

defendant bears the burden of proving that a private party acted as an agent of the government. *Id.*

Here, the trial court reasonably could have concluded that neither of the two factors favors appellant's position. The "intrusive conduct" appellant sees was the facility employees' entry into the storage unit before the eviction proceeding was completed. Clearly police were aware of the property manager's desire to clean the unit and prepare it for re-leasing before the pending eviction proceeding was completed. During the police search conducted on July 19, the property manager approached the officers, telling them he wanted possession of the unit because an eviction hearing was scheduled for July 24. However, the evidence does not demonstrate that police knew the manager was going to enter the unit on July 20, or acquiesced in that action. The police detective testified he told the property manager he could not give the manager "possession of that building" after the police search in the face of Standke's claim that she had a right to its possession.[6] The strongest evidence in appellant's favor on this point is the manager's testimony that "[i]t was implied by the officers that . . . that [the unit] was ours to finish up and clean out."

The record indicates the manager got the impression from the police officers that they were finished with their search and he could "do what you want, he [appellant] ain't coming back." But even that testimony does not establish the officers meant the manager was free to clean the unit out before the eviction proceeding was completed.

---

[6] The detective also told the court, "I told [the property manager] they didn't have anything to do with our investigation, that was a civil deal."

We see no evidence the property manager's intention in entering the storage unit was to assist law enforcement. The manager testified he and the maintenance employee "were trying to get it to where we could rent it back out again." *Compare Riordan v. State,* 905 S.W.2d 765, 773 (Tex.App.–Austin 1995, no pet.) (private citizen summoned home, officers explained to him their purpose for being in the home and requested his assistance in the search) *with Bodde v. State,* 568 S.W.2d 344, 352-53 (Tex.Crim.App. 1978) (landlady entered apartment after defendant had been arrested to prepare it for a new tenant; court concluded she was not a law enforcement officer, was not acting as the agent of law enforcement officers, and her actions were not subject to the Fourth Amendment prohibition).

We find the property manager and the maintenance employee were not acting as instruments of the government when they entered the storage unit on July 20 and found the incriminating evidence. Accordingly, we overrule appellant's second and third points of error.

*Point of Error Four - Article 38.23*

Appellant's fourth point of error presents the contention the evidence the facility employees found was inadmissible under article 38.23 of the Texas Code of Criminal Procedure. Article 38.23 forbids the admission of evidence seized by any officer or other person when that evidence has been obtained in violation of the state or federal constitutions or in violation of state or federal law. Tex. Code Crim. Proc. Ann. art. 38.23

(Vernon 2005); *Miles v. State,* 241 S.W.3d 28, 36 (Tex.Crim.App. 2007)*; Krause v. State,* 243 S.W.3d 95, 103 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd).

Appellant argues the eviction proceedings against him had not been completed and, as a result, when the property manager entered the unit, he violated sections of Chapter 24 of the Texas Property Code. *See* Tex. Prop. Code Ann. § 24.001 (Vernon 2000); Tex. Prop. Code Ann. § 24.0061 (Vernon 2000). The issue in a forcible entry and detainer or forcible detainer proceeding under Property Code Chapter 24 is the right of possession of the premises. Tex. R. Civ. P. 746; *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 434 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd). The record gives us no reason to believe that the propriety of the owner's employee entering the unit on July 20[7] would be addressed by trial of a forcible entry and detainer, or forcible detainer, proceeding. *See* Tex. Prop. Code Ann. § 24.008 (Vernon 2000) (eviction suit does not bar suit for, *inter alia*, trespass). The property manager's entering the unit did not deprive appellant of any right to possession of it. It follows that the manager's entering the unit on that date was not a violation of the law simply because it occurred prior to trial of the pending eviction suit. We overrule appellant's fourth point of error.

---

[7]Based on the suppression hearing testimony, the trial court reasonably could have determined the property manager and the maintenance employee were acting within the scope of their duties as employees of the owner of the property when they entered the storage unit on that occasion.

11

*Point of Error One - Authority of Police to Search Storage Unit*

In appellant's first point, he contends the July 19 search of his unit was illegal because police had no authority to search the premises. A valid consent to a search provides an exception to constitutional warrant and probable cause requirements for a search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App. 2000). A warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's protection against unreasonable searches and seizures if the officers have obtained the consent of a third party who possesses common authority over the premises or effects to be searched. *United States v. Matlock,* 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). "Common authority" rests "on mutual use of property by persons generally having joint access or control for most purposes." *Matlock,* 415 U.S. at 170 n.7. Ownership is not dispositive in determining whether a third party has the authority to consent to a search. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App. 2002).

Here, viewed in the light most favorable to the trial court's denial of the motion to suppress, the evidence included Standke's statement that she was living with appellant in the storage unit. The trial court could have found that conclusion supported by the property manager's testimony that Standke frequently was present at the unit. As noted, it was undisputed appellant was living there. Standke was with appellant in the unit when officers first questioned appellant on the night following the robbery. The storage unit comprised a single space with a bathroom. Access to one part of the unit was access to

12

all of it.  This factor distinguishes this case from those in which consent to search was given by a person who had access to only part of the premises.  *See Corea,* 52 S.W.3d at 316 (no equal access and control despite fact that bedroom door was open and brother-in-law had access to common areas of apartment because no one other than appellant lived in the bedroom)*; Malone v. State,* 163 S.W.3d 785, 796-97 (Tex.App.–Texarkana 2005, pet. ref'd) (brother had no actual authority to consent to search of appellant's bedroom because while he lived in same house as appellant, he did not live in the same bedroom); *Becknell v. State,* 720 S.W.2d 526, 528 (Tex.Crim.App. 1986) (panel op.) (father had no actual authority to authorize search of adult son's room).  With regard to Standke's authority over the unit, the trial court also could have considered officer testimony that she insisted she had a right to be at the unit and was "going to keep the key" when police completed their search.

Again, viewing the evidence in the proper light and deferring to the trial court's role in the evaluation of the credibility of witnesses and weight to be assigned to conflicting testimony, we find the trial court reasonably could have determined Standke had actual authority to consent to a search of the storage unit being used as a residence.  *See Nelson v. State,* No. 06-02-00098-CR, 2003 WL 252146 (Tex.App.–Texarkana Feb. 6, 2003, pet. ref'd) (mem. op., not designated for publication) (maid informed officers man and woman were living in motel room; female informed officer that she lived there and had been there a while; appellant denied she lived there, but court found the officer's testimony

13

was sufficient to show the female had actual authority to consent to the search).[8] We overrule appellant's first point of error.

*Point of Error Five--Factual Sufficiency*

In appellant's last point of error, he contends the evidence presented at trial was factually insufficient to support his conviction for aggravated robbery. A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Grotti v. State,* 273 S.W.3d 273, 283 (Tex.Crim.App. 2008); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006)*; Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006). In a factual sufficiency review, we consider all the evidence, but in a neutral light. *Grotti,* 273 S.W.3d at 283; *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414. Although an appellate court's authority to review factual sufficiency permits the court to disagree with the fact finder's determinations, even to a limited degree those concerning the weight and credibility of the evidence, the appellate court must accord them due deference. *Marshall*, 210 S.W.3d at 625; *Johnson*, 23 S.W.3d at 9. *See also Steadman v. State,* ___ S.W.3d ___, No. PD-1311-08, 2009 WL 838550, *4 (Tex.Crim.App. April 1, 2009). When there is a conflict in the evidence, to find it

---

[8]The State argues alternatively that police reasonably relied on Standke's apparent authority to consent to the search even if she lacked actual authority. *See, e.g., Davis v. State,* 93 S.W.3d 664, 669 (Tex.App.–Texarkana 2002, pet. ref'd) (based on female's statements at the residence that she lived there, it was reasonable for officer to conclude she could consent to the search). We do not find it necessary to address this contention.

factually insufficient we must first be able to say, with some objective basis in the record, that the great weight and preponderance of all the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417. We must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Laster v. State,* 275 S.W.3d 512, 518 (Tex.Crim.App. 2009); *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

The State called Standke as one of its witnesses. She acknowledged signing her written statement to Detective Martinez, but denied that its contents implicating appellant were true. She testified she was the passenger in the white Lumina outside the pizza restaurant but said the man with her was not appellant. Appellant testified to his version of the events. He testified he was asleep in his storage unit at the time of the robbery, and suggested Standke took the Lumina without his permission. He said he had an idea who committed the robbery, but declined to name the person. He denied owning any guns, and denied ever having seen the handgun found in the storage unit. His testimony emphasized that he had no opportunity to return to the storage unit after his arrest but that Standke had such opportunity.

On appeal, appellant's evidentiary sufficiency contention also focuses on the evidence of his identity as the robber. He points out no physical evidence connects him to the pizza restaurant, no witness from the restaurant identified him at trial as the robber, his fingerprints were not found on the handgun, he denied ownership of the gun, and the mask found in his storage unit was not positively identified as the one worn by the perpetrator. Additionally, appellant points to the fact he did not flee from officers when he was questioned about the robbery the day after its occurrence, and that he was not

15

arrested on that occasion. Appellant also asserts that his height and weight do not match the physical description of the robber given by the restaurant manager. He contends the evidence negating his guilt significantly outweighs the evidence supporting his conviction. We disagree.

Appellant acknowledges the robber drove his white Lumina, and no convincing evidence points to any driver but appellant. Even from review of the cold record, the incredibility of Standke's trial testimony attempting to exculpate appellant is apparent. The State's expert testified the handgun found with the ski mask and gloves in the storage unit was the gun that fired the shell found in the restaurant, and the jury was free to disbelieve appellant's denial of his ownership of the gun. Even Standke testified she had seen him with a black handgun. Standke's written statement, which the jury was free to accept as the truth over her trial testimony, directly connected appellant with the robbery. We see no record evidence appellant's physical appearance differs significantly from that given by witnesses at the robbery scene. The pizza store manager noted the robber had a deep voice. Standke testified appellant has a deep voice. Having reviewed the entire record, we find the evidence is neither so weak that the jury's verdict seems clearly wrong and manifestly unjust, or that the evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. Appellant's last point of error is overruled.

Having overruled appellant's points of error, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.