UNITED STATES of America, Plaintiff-Appellee,

v.

George Joseph KUCINICH, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

John James TAYLOR, Defendant-Appellant.

Nos. 18416, 18417.

United States Court of Appeals Sixth Circuit.

Nov. 27, 1968.

Thomas W. Thomson, Knoxville, Tenn. (Court appointed) for defendant-appellant Kucinich.

B. R. McGee, Knoxville, Tenn. (Court appointed) for defendant-appellant McGee.

Edward E. Wilson, Asst. U. S. Atty., Knoxville, Tenn., for appellee; J. H. Reddy, U. S. Atty., Knoxville, Tenn., on brief.

Before O'SULLIVAN, PHILLIPS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

These are consolidated appeals from a judgment entered by the United States District Court for the Eastern District of Tennessee. Appellants were jointly tried without a jury and convicted of possessing a stolen Mercury automobile (18 U.S.C. § 2313) and stolen luggage (18 U.S.C. § 659). The Court sentenced them to five years for each offense, the sentences to run consecutively. Appellant Kucinich was also convicted under 18 U.S.C. §§ 641 and 500 of certain offenses relating to stolen money orders and Appellant Taylor was convicted under 18 U.S.C. § 641 of unlawful possession of five stolen money orders. The Court imposed one-year sentences on each count of these indictments, to run concurrently with each other and with the first five-year sentence imposed in the automobile case. Appellants now challenge their convictions on grounds relating to the way the evidence against them was procured.

On December 1, 1966, F.B.I. Agent Pollatie received information in his Knoxville, Tennessee office that two automobiles, a Ford and Mercury, had been rented from the Hertz Corporation by a John T. Demoss and not returned. The Mercury, which was rented in Nashville, was described by Hertz as a dark green or turquoise 1966 Montclair bearing the Hertz identification Number 566–36 and Tennessee license plate AD 8364. Pollatie was told that the Ford, which was leased from the Knoxville airport in Blount County, was white. He learned later that Demoss, who lived in Ohio, had either lost his credit cards or had them stolen, and the Tennessee State Police were looking for Demoss or his impersonator on a state breach of trust warrant.

About 3:00 a. m. on December 15, 1966, Pollatie received a call from the manager of the Esquire Motel located in Blount County, Tennessee. Two men, a woman and child, according to the manager, had arrived in a green 1966 Mercury with Pennsylvania license plates and one of the party had registered under the name "John T. Demoss". Pollatie immediately called Hertz and learned that neither the Ford nor the Mercury had been returned. In an earlier conversation on this date with Hertz, Pollatie learned that one of the men who rented the Ford resembled one Edmondson, who was at that time on the F.B.I.'s ten most wanted list.

About 4:15 a. m., Pollatie and two other F.B.I. agents drove to the Motel. The manager told him that he had assigned the Demoss party to Room 13. Pollatie showed the manager a photo of Edmondson and the manager said that one of the men in Room 13 resembled him. Pollatie then called the Knoxville F.B.I. office to check out the Pennsylvania license plate and learned that it belonged to a Chevrolet.

The Mercury was parked at the door of Room 13. Pollatie walked over to it, looked through a window and saw some Cincinnati newspapers which were dated December 14, 1966. Still looking through the window, Pollatie was able to discern, on the back of the rear view mirror, the following numbers: 56—36. He then returned to the Motel office and called the Blount County Sheriff's office. Three deputy sheriffs arrived at the Motel at 5:30 a. m.

At 6:00 a.m. Taylor walked out of Room 13 and into the Motel's restaurant. When Deputy Giles approached Taylor there, Taylor identified himself, denied using the name Demoss, and denied knowing the people in Room 13. He claimed that he met them for the first time at the Knoxville airport. Giles remained in the restaurant with Taylor.

Pollatie and two deputies then went to Room 13 and knocked. Kucinich opened the door and the agents identified themselves, but Kucinich did not. He began backing into the room, the officers following. Kucinich then said his wife was not dressed and the group moved out of the room. Kucinich then became agitated, began cursing, and reached toward his belt. The officers wrestled him to the ground and handcuffed him after a short fracas. They searched him and found, among other things, some luggage identification tags and an automobile key.

Pollatie and Giles then asked Taylor if he would mind going to the Hertz office at the Knoxville airport. They explained that a Ford automobile had been rented there and never returned. Taylor agreed to go and the girl in charge identified him as accompanying the man who rented the Ford under the name of John T. Demoss. The officers took Taylor back to the Motel where he was arrested under the State warrant.[1]

1. Appellants conceded during oral argument that no error could attach to any failure to warn Taylor of his right to counsel during this pre-trial identification as now required by United States v.

Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 19 L.Ed.2d 1178 (1967), since the trial itself occurred well before Stovall v. Denno,

Kucinich and Taylor were then taken to the Blount County jail in separate patrol cars.

The officers then opened the Mercury trunk with the key they had obtained from Kucinich and found the stolen luggage.[2] This luggage and other evidence which will be discussed later were turned over to the United States Attorney for the Eastern District of Tennessee.[3]

We deal first with Appellants' claim raised throughout the trial on motions to suppress under Rule 41(e), Federal Rules of Criminal Procedure, that the luggage taken from the Mercury was fruit of an unreasonable search. Appellants contend that the agents did not have sufficient probable cause to arrest Kucinich, therefore, the consequential search was invalid. Or, if the arrest was valid, the search was so remote in time that a warrant was required.

 The rule that a valid arrest justifies a limited warrantless search is well settled but its application has caused the courts considerable difficulty. A limited search may be made by officers when necessary to protect themselves, to deprive prisoners of means of escape and to avoid the destruction of evidence. See United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. The officers may properly seize means by which the crime was committed, its fruits, contraband, and more recently, mere evidence. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1966). This seizure is allowed only if the search was *incidental* to a valid arrest. As an exception to the Fourth Amendment command against arbitrary invasions of privacy, the necessity that justifies a warrantless search has been and must be narrowly construed. See, e. g., Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925).

 We hold that sufficient probable cause existed for Kucinich's arrest. Pollatie had reason to believe that the Mercury parked in front of Room 13 was that which Hertz reported as stolen. Its color, year, make, and what Pollatie could make out of the serial number on the rear view mirror corresponded with information he had; the Motel manager had told Pollatie that one of the two men in the party had registered under the name of John T. Demoss and that all of them arrived in the Mercury; and the Cincinnati newspapers in the rear of the car suggested that it had recently crossed the Tennessee State line. The test is whether a reasonable man, given all the facts available to Pollatie, would have believed that a crime had been committed by Kucinich. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

We accept Appellants' contention that the search of the Mercury took place at a time too remote from Kucinich's arrest. But resting as it must on Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), it can rise no higher than the constitutional protection of privacy there spelled out. When the search of the car took place in *Preston*, Petitioners were under arrest in the police station and the car was also in police custody. Recognizing that police can, upon a valid arrest, make a contemporaneous search of the person which may extend to things under his immediate control and to an extent to the

---

388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which held that *Wade* and *Gilbert* were to be prospectively applied from the date of the *Denno* opinion, which was June 12, 1967. See United States v. Beard, 381 F.2d 329 (6th Cir. 1967).

2. This was the luggage listed in the indictment returned against Kucinich and Taylor. Kucinich's wife was also named in this indictment but she was not tried with Appellants. Although Appellants contend that the Motel room was improperly searched, we find nothing in the record to indicate that such a search took place or that evidence obtained in the room was used against them.

3. A search of Taylor upon his arrival at the Blount County jail turned up a key that fit the doors and ignition of the Mercury. No question has been raised by Appellants regarding this search.

place where he was arrested, the Court held that the *necessity* for such a search was absent since the Petitioners and the car were both under police custody.

In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1966), another case involving the seizure of evidence from an automobile some time after the arrest of its occupant, the Court discussed the constitutional premise on which *Preston* was based, saying: "the search [in *Preston*] was therefore to be treated as though [the] car was in [*Preston's*] *or his agent's possession.*" (Emphasis added). The Court went on to say that the "reason for and nature of the custody may constitutionally justify the search."

■ The County police here had custody of the Mercury not as agent of Kucinich and Taylor, but on behalf of Hertz. The Mercury was no longer in Appellants' possession.[4] Since the search did not invade Appellants' privacy they were not "persons aggrieved" within the meaning of Rule 41(e). Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1959); consequently, they lacked standing to challenge the validity of the search and the introduction of its harvest into evidence. United States v. Graham, 391 F.2d 439 (6th Cir. 1968), Rodgers v. United States, 362 F.2d 358 (8th Cir. 1966), cert. denied, 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454.

We deal now with Appellant Taylor's contention that his conviction for unlawful possession of the stolen money orders stands on a statement obtained by the Blount County Sheriff in violation of the rules set forth in Miranda v. Arizona, 384 U.C. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).[5] We agree and reverse this conviction.

The money orders in question were obtained from a wallet found by a jail trusty in the patrol car that brought Taylor to the Blount County jail. The trusty gave the wallet to Blount County Sheriff Wilson who searched it, discovered the money orders, and removed them. Sheriff Wilson went to Taylor's cell, held the wallet in front of Taylor and asked if the wallet was his, to which Taylor said "yes". Taylor had not been warned of the consequences of his failure to remain silent or advised of his right to retain counsel.

■ In *Miranda* the Supreme Court was crystal clear in setting forth the consequences following a failure by the police to advise a suspect in custody of his rights. Before the prosecution may use a statement of the accused stemming from custodial interrogation, defined by the Court as questioning initiated by law enforcement officers after a person has been taken into custody, it must show that he was warned of his rights to remain silent and to retain counsel, and advised that any statement he does make may be used against him. These warnings secure to the accused his privilege against self-incrimination. If they are not given, the statement is inadmissible.

The *Miranda* warnings are required because of the compulsion which the Court determined is inherent in custodial surroundings. They serve to overcome this compulsion, allowing the accused to freely choose whether to forego his right to remain silent. The gist of *Miranda* is that any statement of an accused while in custody is ipso facto involuntary unless he has been properly warned.

■ Since Taylor was not so warned before being questioned by Sheriff Wilson, his statement that he owned the wallet could not be used to show, as it was, that he possessed the five stolen money orders.

---

4. Nor could either of them claim an ownership interest or other right to the car. See Cotton v. United States, 371 F.2d 385 (9th Cir. 1967).

5. Since this trial began after June 13, 1966, the applicability of *Miranda* is properly before us. Johnson v. United States, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Judgment of the District Court is affirmed on all counts except as to Count 2 of the indictment relating to Appellant Taylor in Case No. 17,403, violation of 18 U.S.C. § 641, which is hereby reversed.