STATE of Missouri, Respondent,

v.

West Pharris MAY, Jr., Appellant.

No. WD 30810.

Missouri Court of Appeals,
Western District.

March 2, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1981.

Application to Transfer Denied
May 11, 1981.

Richard S. Brownlee, III, Jefferson City, for appellant, Hendren & Andrae, Jefferson City, of counsel.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

PRITCHARD, Presiding Judge.

Appellant was found guilty by the verdict of a jury of robbery in the first degree, and being found to be a second offender, was sentenced to 35 years imprisonment in the Division of Corrections.

A Kroger Store in Jefferson City, Missouri, was robbed after two black males entered it on July 11, 1978. After a few minutes, one of the men approached the office area, exhibited a gun and demanded that the cashier put all of the money in the money drawer into a brown paper bag which had earlier been taken from a checkout stand by him. The submissibility of the state's case is unquestioned. Appellant's assertions of error relate to his identification, search of the automobile in which he was a passenger without a warrant, introduction of a gun into evidence said not to be linked to the robbery, marking as an exhibit and displaying of a stocking mask found under the front seat of the vehicle in which appellant was a passenger, the mask not being used in the robbery and said by him capable of being construed as evidence of other crimes, and refusal of the trial court to permit appellant to present evidence of post-arrest transactions to show law enforcement prejudice against him and to corroborate his claim that the charge was fabricated because of his refusal to testify in prior criminal proceedings.

Appellant represented himself, in both the pre-trial proceedings and in the trial, but in the latter proceedings, counsel was provided at the counsel table as his "legal advisor" as appellant called him. The record shows that appellant did an able job in presenting defenses.

At the time of the robbery, Marilyn Jones was working at the Kroger Store as a checker. She saw the two black males enter the store and go to a bench at its front where, after standing awhile, they sat down and remained there 5 to 10 minutes during which they were in her view. One of the men then went to one of the check lanes, got a paper bag and then went back to the bench. The two continued talking about 5 minutes, and then the man went over to the office of head checker, Marie Bishop. That

office was enclosed but had a glass window around the top through which Marilyn saw the top half of Marie's body. Marilyn went to the checker office to get food stamps and there was the man and stood side by side to him. Marilyn pointed out appellant in open court as being that man. After Marilyn went back to her check stand, she saw appellant standing in front of the window and Marie doing a pushing motion. Marilyn thought they were being robbed. She saw appellant go out the door by which time the other man had left to go for his car. She saw the car, a station wagon, and she wrote down its license number. While appellant was in the store, he was not wearing anything to cover or hide his face, and there was nothing with respect to lighting that would hinder her view.

Later the same day, Marilyn saw the two men she had seen in the store at the police station, when she was in one room and they were in another. Her testimony is somewhat confused as to when she saw both men, but apparently this happened: She was asked to look into a room to see if there was anyone there she had seen before, at which time there was one police officer and one other person. Then she was required to look through a window, through which she could see but the persons on the other side could not, and "don't make any decisions, just look, take my time and to see if there was anybody there I had seen before." On looking, she saw both Guest (the other man) and appellant. There was no doubt in her mind that she was looking at the same two men she had seen earlier. On cross-examination, Marilyn testified that she did not remember seeing handcuffs on appellant when the police officer asked him to turn around.

Roe N. Wilkerson, a road trooper for the Missouri State Highway Patrol, was on duty on I–70 in Callaway County on the morning of July 11, 1978. He received a radio broadcast about the Kroger Store robbery, with a vehicle description and a license number. He observed a vehicle matching the description going east on I–70. He crossed the median and gave chase, being able to catch up with it, then notifying the dispatcher of his activities. He stopped the vehicle with red lights and siren as it exited on the deceleration ramp at the Williamsburg Interchange. The driver first exited the vehicle and then the passenger (who was appellant), both of whom were ordered to "spread eagle" on the back of the car, which they did. Trooper Liley came to Roe's assistance and Liley searched and handcuffed the suspects. Appellant, who was the passenger, was pointed out in court. Trooper Phillips then arrived, but Roe did not participate in a subsequent search of the automobile. No search warrant was obtained for the search.

After Liley arrived, he went to the right front door of the vehicle which was standing open, looked on the floorboard on the passenger side and saw a light brown vinyl or leather looking kind of attaché case. He looked into it and saw a large sum of money and two loaded revolvers. There were items in plain view in the back seat which Phillips seized, and apparently Liley seized the attaché case on the front floorboard.

The foregoing evidence was presented in the pre-trial motion to suppress the identification testimony and to suppress the evidence seized from the automobile, which motion was overruled.

At the trial, Marie Bishop testified that she was the head cashier of the Kroger Store in Jefferson City, in charge of doing the books and taking care of the money on July 11, 1978. Persons in checkout lanes would bring money in excess of $300 to Marie, which happened about every 20 minutes with checkers. As she was working, a black gentleman came to her enclosed office, exhibited a gun and told her to put the money in a paper bag he was carrying. Marie was not able to identify appellant as that man. She testified that State's Exhibit 2 was not the gun used by the man, but she identified State's Exhibit 1 as the one used.

Marilyn Jones' trial testimony was substantially the same as that given by her in the pre-trial hearing on the motion to suppress, and she did make an in-court identification of appellant as the robber, and she identified pants, a shirt and shoes as being those he was wearing that day. Both appellant and his companion, Anthony Guest, were wearing sun glasses that day in the store.

■ By Point I appellant contends that Marilyn Jones' identification of him at the police station was unduly suggestive because the only persons viewed by her were appellant and a white police officer, she not being permitted to view other persons with characteristics similar to appellant's. He says the identification was unduly suggestive and tainted both the police station and the in-court identifications. Marilyn saw appellant within an hour or two after the robbery, and this brings the matter, as the state says, to the analogous situation where a suspect is returned to the scene of a crime soon thereafter by police to be viewed by a victim. No inherently suggestive procedures have been found in those cases. See *State v. French*, 528 S.W.2d 170, 173 (Mo. App. 1975), where the court reiterated the desirability of ascertaining as quickly as possible whether the person apprehended was the person sought and the likelihood that prompt confrontation may assure reliable identification. See also *State v. Maxwell*, 502 S.W.2d 382, 389 (Mo.App. 1973), cited in the French case. Appellant here, in cross-examination of Marilyn, attempted to elicit from her that he was in handcuffs at the time of confrontation, but she responded that she did not recall seeing any handcuffs on him then. Even if that were true, the French case holds that confronting victims with the suspect who is handcuffed and in the custody of the police does not render the situation impermissibly suggestive.

Even assuming that there were some elements of suggestivity by inference from the facts that Marilyn was brought to the police station to view suspects, that she was asked to look into a room to see if there was anyone there she had seen before, and she saw appellant in the presence of a police officer, any doubt that thereby might be thrown on the in-court identification is dispelled by the facts in this case showing a source independent of the police station viewing. In testing that source, *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), set forth the factors to be considered: 1. The opportunity to view [here Marilyn viewed appellant at the front of the store and at the chief checker's station for 10 to 15 minutes]; 2. The degree of attention [Marilyn grew suspicious of appellant and his companion and watched them carefully during the time they were in the store, including when they left, and she was able to get the license number of the vehicle they were using]; 3. The accuracy of the description [no description was given by Marilyn to the police of the individuals, but she did describe the vehicle and gave its license number]; 4. The level of certainty [there was no doubt in Marilyn's mind but that appellant was one of the culprits]; 5. The time between the crime and the confrontation [here, it was within two hours after the robbery, clearly when Marilyn's memory would have been fresh]. See also *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *State v. Bivens*, 558 S.W.2d 296, 300 (Mo.App. 1977), and cases cited. Under these facts and the foregoing authority, Point I is overruled.

■ Point II is that the evidence of search and seizure of items from the vehicle in which appellant was riding as a passenger should have been suppressed and excluded at trial. The trouble with appellant's contention is that he has no standing to complain of the search and seizure and subsequent trial admission into evidence of the items seized. He nowhere asserts a proprietary interest in the automobile. In fact, his allegation in the motion to suppress the evidence is: "2. Defendant further moves this court to suppress and declare illegal

any and all items *taken from the automobile of co-defendant, Anthony Guest on July 11, 1978 * * *.*" (Italics added.) Then, speaking of the clothing taken from the back seat of the vehicle [which clothing Marilyn Jones identified as that which appellant was wearing during the robbery], appellant, on cross-examination, testified the items of clothing were in Anthony Guest's mother's car. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978), controls. There it was held that the defendants who were passengers in a searched car (glove compartment), had asserted neither a property or possessory interest in the automobile, nor an interest in the property seized. The court said, "Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." See also *State v. Carter*, 591 S.W.2d 219, 221[3] (Mo.App. 1979).

Appellant, however, claims he had an interest in the property seized because, according to him, he had stolen the attaché case and the money in it from a John Seniornor in St. Louis three days earlier. That contention is answered by *State v. Perkins*, 543 S.W.2d 805, 808 (Mo.App. 1976), "The 'standing' envisioned as sufficient to challenge the constitutionality of a search and seizure cannot stem from the possession by a thief of stolen property seized by police under plain view, * * * [as is the fact in this case]. (Citing cases.)" [Brackets added.] Point II is overruled.

■ Marie Bishop positively identified State's Exhibit 1 as the gun used in the robbery. State's Exhibit 2, which was shown to her was testified by her as a gun that was not used. Point III challenges the admission of State's Exhibit 2 into evidence because as he says, it was not linked to the robbery. Both guns were admissible as showing that appellant and his accomplice were armed and involved in a common scheme—robbery. *State v. Johnson*, 539 S.W.2d 493 (Mo.App. 1976). The connection

of the weapon with appellant's act of robbery was sufficiently established. *State v. Clark*, 592 S.W.2d 709, 717[7] (Mo. Banc 1979). Point III is overruled.

■ Point IV is that the stocking mask, testified to as being seized in the search of the vehicle, was improperly displayed to the jury, and because it had no connection with the robbery (was not used), it was capable of being construed as evidence of other crimes. During trial, the state withdrew its offer of the mask as evidence, but apparently it was passed from a witness to the counsel table in the view of jury. There was very brief testimony about the mask. Appellant's request for mistrial, the only relief urged, was denied, and the court offered to instruct the jury to disregard any reference to the exhibit, which appellant declined. Thus, the trial court determined that a mistrial was not indicated, and there appears to be no abuse of discretion in that regard. *State v. Sanders*, 608 S.W.2d 507 (Mo.App. 1980). Point IV is overruled.

■ The last assertion, Point V, relating to the court's refusal to permit appellant to present evidence of post-arrest transactions to show law enforcement prejudice against him and to corroborate his claim that the charge was fabricated because of his refusal to testify in prior criminal proceedings is overruled. Appellant was permitted to present that theory of defense by his testimony and other witnesses. Objections sustained as to portions were on the basis of irrelevancy and immateriality. Such is not error. *State v. Walden*, 490 S.W.2d 391, 393 (Mo.App. 1973). Appellant's Point V fails, also, to point out why and wherein the trial court rulings were in error and are insufficient under Rule 30.06(d).

The judgment is affirmed.

All concur.