STATE of Missouri, Respondent,

v.

Daneal H. NICHOLS, Appellant.

No. 12131.

Missouri Court of Appeals, Southern District, Division One.

Feb. 11, 1982.

William R. King, Noel, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

Defendant Nichols, having waived a jury, was found guilty by the trial court of burglary in the second degree, § 569.170,[1] and received a sentence of seven years' imprisonment. Defendant appeals.

Defendant's sole "point relied on" is that the trial court erred in overruling his pretrial motion to suppress certain evidence and in admitting that evidence at the trial for the reason that the evidence was "seized pursuant to an unlawful arrest" in violation of defendant's alleged rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and under Art. I, Sec. 10 (due process of law) and Sec. 15 (unreasonable search and seizure) of the Constitution of Missouri. The state argues that defendant had no "standing" to object to the search and seizure of the evidence.

Defendant was charged with, and convicted of burglarizing the home of Ruth Wimpey at Goodman, Missouri. The offense took place on June 19, 1980. Early in the afternoon of that day, after the Wimpey burglary had been committed, defendant was arrested by Bill Estes, marshal of Goodman, Missouri, a city of the fourth class. The arrest took place at a point outside the city limits. At the time of his arrest defendant was in possession of the challenged evidence which consisted of a .22 caliber rifle, one "over-

---

1. Unless otherwise indicated all references to statutes are to RSMo 1978 V.A.M.S. and all references to rules are to Missouri Rules of Court, V.A.M.R.

night case"[2] and the contents[3] of the overnight case.

The rifle, the overnight case, and its contents, were owned by Ruth Wimpey and were stolen at the time of the burglary. These facts are fatal to defendant's constitutional contentions.[4]

The initial inquiry is whether or not defendant suffered violation of any Fourth Amendment[5] right.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. . . . A person who is aggrieved by an *illegal* search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed, . . . And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment . . ., it is proper to permit only de-

fendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). (Emphasis added.)

In *Rakas*, the Court rejected the so-called "target theory" under which any criminal defendant at whom a search was "directed" would have standing to contest the legality of that search and object to the admission at trial of evidence obtained as a result of the search.

In *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 2551, 65 L.Ed.2d 619 (1980) the court said: "In *Rakas*, this Court discarded reliance on concepts of 'standing' in determining whether a defendant is entitled to claim the protections of the exclusionary rule. The inquiry, after *Rakas*, is simply whether the defendant's rights were violated by the allegedly illegal search or seizure."

---

2. The overnight case is a small suitcase of the type customarily used by ladies for carrying cosmetics and personal accessories.

3. The contents consisted of some .22 shells, three pocket knives, a wrist watch, a billfold, a pocket watch, a pen and pencil set, a camera, three T-shirts, "soap and cologne," and a money bag containing coins.

4. The arrest of defendant by Marshal Estes was pursuant to information given him by one Geneva Vasco who also lived in Goodman. Shortly before noon on June 19 defendant stopped at Mrs. Vasco's house and she gave him a drink of water. After he left she noticed that a screen had been removed from one of her windows *and there had been an "attempted break-in."* She gave that information to Estes together with a description of defendant.

 Since the arrest took place outside the city limits, defendant argues that § 85.610, dealing with the powers of a marshal of a city of the fourth class, did not constitute authority for making the arrest in his capacity as marshal. Defendant also argues that the facts were not such as to justify the arrest by Estes in the capacity of private citizen. The brief of the state seeks to justify the arrest "because it was a proper citizen's arrest in that Marshal Estes knew a felony had been committed [the attempted burglary, § 569.170 and § 564.011, of the Vasco residence] and he had reasonable grounds to believe that defendant had committed the offense." The state seems to argue that

the search and seizure were justified as incidental to a lawful arrest by a private citizen.

 In view of the disposition of the appeal the validity or invalidity of these contentions need not be determined, nor is it necessary to consider whether defendant's contention that Estes was acting as a private citizen is itself fatal to his constitutional arguments. (See 36 A.L.R.3d 553—admissibility, in criminal case, of evidence obtained in search by a private individual). "[I]f the police officers had no authority as police officers outside the city limits, they then acted as private individuals. As such they could testify as to what they saw. The constitutional protection which appellants attempt to invoke applies only to government action." *State v. Stark*, 502 S.W.2d 261, 264 (Mo.1973). *The foregoing principle is not mentioned by either side to this appeal.*

5. The Fourth Amendment's right of privacy is enforceable against the states through the due process clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In that case the Court held that the Fourteenth Amendment did incorporate the "exclusionary rule" enunciated in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) and therefore adherence to that rule by the states was mandatory. *For criticism of the exclusionary rule and a suggestion that it be reevaluated see California v. Minjares*, 443 U.S. 916, 100 S.Ct. 9, 61 L.Ed.2d 892 (1979) (Mr. Justice Rehnquist, with whom the Chief Justice joined, dissenting.)

"The person in *legal* possession of a good seized during an *illegal* search has not necessarily been subject to a Fourth Amendment deprivation." *Salvucci*, 100 S.Ct. l.c. 2552. (Emphasis added.)[6]

"While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, see *Rakas*, supra, 439 U.S., at 144, n. 12, 99 S.Ct., at 431, property rights are neither the beginning nor the end of this Court's inquiry. In *Rakas*, this Court held that an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.'" *Salvucci*, 100 S.Ct. l.c. 2553. Finally, in *Salvucci*, 100 S.Ct. at 2553, the Court said: "We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched."

The inquiry then becomes, what constitutes a "legitimate expectation of privacy" in the area searched?

"[A] 'legitimate' expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, *but it is not one which the law recognizes as 'legitimate.'* His presence, in the words of *Jones* [*v. United States*], 362 U.S., [257] at 267, 80 S.Ct., [725] at 734, [4 L.Ed.2d 697] is 'wrongful', his expectation is not *'one that society is prepared to recognize as "reasonable."'* *Katz v. United States*, 389 U.S., [347] at 361, 88 S.Ct., [507] at 516 [19 L.Ed.2d 576] (Harlan, J., concurring).... Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the

main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or *lawfully* possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. These ideas were rejected both in *Jones*, supra, and *Katz*, supra. But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment." *Rakas*, supra, 99 S.Ct. at 430–431. (Emphasis added.)

If a burglar wrongfully occupying a cabin has no legitimate or reasonable expectation of privacy in the cabin, it would make no sense to hold that the burglar had a reasonable or legitimate expectation of privacy in an article which he steals from the cabin.

Possessors of articles which they themselves have stolen have not fared well in asserting violations of Fourth Amendment rights. In *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), the court held that the defendants did not have standing to challenge the seizure of goods which they had stolen. At the time of the seizure the goods were in a store owned by a co-felon, the search was conducted pursuant to a defective warrant, and the objecting defendants were not present at the time of the search. The court, at 93 S.Ct. 1569, said: "[Defendants] were afforded a full hearing on standing and failed to allege any *legitimate* interest of any kind in the premises searched *or the merchandise seized.* Nor, incidentally, does the record reveal any such interest.... [Defendants] now contend that they had a partnership 'property

---

**6.** The Court, in *Salvucci*, 100 S.Ct. l.c. 2552, pointed out that *legal* possession of the seized good may be sufficient to entitle defendant to

seek return of the seized property if the seizure, as opposed to the search, was illegal.

interest' in or 'constructive possession' of the stolen goods found at Knuckles' store, as a conspiracy is a 'partnership in crime.' Even if the petitioners had not already 'sold' the merchandise to Knuckles, their 'property interest' in the merchandise was *totally illegitimate.*" (Emphasis added.)

In *State v. Boutot*, 325 A.2d 34 (Maine 1974), the defendant escaped from the scene of a homicide in a car stolen from his victim. The court held that the defendant "had no expectation of privacy (in the car) which the law is willing to recognize as reasonable" and that the defendant "was without standing to object to the introduction into evidence of the fruits of the search of his victim's car."

Similarly in *United States v. Hargrove*, 647 F.2d 411 (4th Cir. 1981), the court held that a defendant, who was driving a stolen car when he was stopped by the police, had no standing to object to a search of the vehicle. Pointing out that the defendant had the "burden to establish standing to contest the search at the suppression hearing," a topic which will be treated later in this opinion, the court said: "It sufficed at the very least to require him to show, if he could, that he acquired the car innocently. This he failed to do." Cited below[7] are other cases holding, or at least strongly intimating, that a wrongful possessor of an article has no right to complain, on Fourth Amendment grounds, of its search and seizure.

Rule 41(e), Fed.Rules of Crim.Proc., reads, in pertinent part: "*A person aggrieved* by an *unlawful* search and seizure may move the district court for the district in which the property was seized for the re-turn of the property on the ground that he is entitled to *lawful* possession of the property which was illegally seized...."[8] (Emphasis added.) In *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969), the Court, specifically referring to the "person aggrieved" language from Federal Rule 41(e), said: "Rule 41 conforms to the general standard and is no broader than the constitutional rule."

When a defendant files a motion to suppress evidence based on Fourth Amendment grounds, the burden of proof is on him to show "not only" that the search was illegal, "but also that he had a legitimate expectation of privacy" in the thing which was searched. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). The imposition of the burden of proof on defendant to show that he is "a person aggrieved" is consistent with the holding in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), that testimony given by defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. See also *United States v. Salvucci*, supra, 100 S.Ct. 2547, 2551.

At a hearing on a motion to suppress, based on Fourth Amendment grounds, it is incumbent upon the movant-defendant to carry the burden "of establishing the scope of his personal Fourth Amendment rights" and even if the government does not "raise that standing issue" at that hearing, the failure is that of the defendant and not that of the government. *United States v. Miller*, 636 F.2d 850, 854 (1st Cir. 1980). To similar effect see *United*

---

7. *United States v. McCambridge*, 551 F.2d 865, 870 (1st Cir. 1977); *United States v. Kucinich*, 404 F.2d 262, 266 (6th Cir. 1968); *United States v. Konigsberg*, 336 F.2d 844, 847 (3rd Cir. 1964); *State v. May*, 613 S.W.2d 877, 881 (Mo. App.1981); *State v. Perkins*, 543 S.W.2d 805, 808 (Mo.App.1976); *State v. Bates*, 540 S.W.2d 161, 165 (Mo.App.1976); *Osborne v. State*, 82 Nev. 342, 418 P.2d 812, 813 (1966); *State v. Pokini*, 45 Haw. 295, 367 P.2d 499, 509 (1961).

8. Compare § 542.296 dealing with "Motion to suppress, grounds for." That statute reads in part: "1. *A person aggrieved* by an *unlawful* seizure made by an officer and against whom there is a pending criminal proceeding growing out of the subject matter of the seizure may file a motion to suppress the use in evidence of the property or matter seized...." (Emphasis added.) Rule 34.01 reads: "The provisions of Chapter 542, RSMo, shall govern procedure in searches and seizures."

*States v. Molina-Garcia,* 634 F.2d 217, 218 (5th Cir. 1981).

 The foregoing principles apply to Fourth Amendment proceedings in Missouri courts. In general, they also apply where violations of Art. I, Sec. 15 of the Missouri Constitution are asserted. In *State v. McCrary,* 621 S.W.2d 266 (Mo. banc 1981), the court held that the "reasonable expectation" test for standing under Art. I, Sec. 15 "is identical to the 'legitimate expectation of privacy' test adopted by the United States Supreme Court in the *Rakas* case." In *McCrary* the court also said that in order for defendant's Fourth and Fourteenth Amendment rights to have been violated, or for defendant to have standing to assert a violation under Art. I, Sec. 15 of the Missouri Constitution, defendant must have had a legitimate expectation of privacy in the place or thing searched. Finally, in *McCrary,* the court said, at p. 273: "At the hearing on appellant's motion to suppress, appellant made no claim that he had either an actual, subjective expectation of privacy in the cardboard box that was searched or that his expectation of privacy was legitimate. 'The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.' *Rakas,* 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1. See *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). Missouri follows this rule."

The instant record will now be examined in light of the foregoing principles.

Defendant's motion to suppress described the challenged evidence and stated that they were "obtained directly or indirectly from a search of defendant and items in his possession by Bill Estes, city marshal of Goodman, Missouri, or other law enforcement officers...." The motion then stated that the articles were searched and seized in violation of the Fourth and Fourteenth Amendments of the U. S. Constitution and Art. I, Sec. 15 of the Missouri Constitution.

 At the hearing on the motion to suppress, held on the day of the trial and prior to its commencement, defendant did not testify. The only evidence he adduced at that hearing was the testimony of Geneva Vasco who described the information she gave to Marshal Estes, as set forth in Footnote 4. State's witnesses testifying at the suppression hearing were Marshal Estes and another law enforcement officer, the latter not having been present at the time of the arrest. There was nothing in the testimony of either officer which showed the manner in which defendant acquired possession of the challenged evidence. The state's evidence merely showed that defendant was in possession of that evidence at the time of the arrest but, as the foregoing authorities demonstrate, mere possession is not tantamount to a legitimate or reasonable expectation of privacy. It is the latter ingredient which defendant had the burden of showing in order that he be "a person aggrieved" by the search and seizure, even if the search and seizure were unlawful.

At the trial itself Mrs. Wimpey and her son identified the rifle, the overnight case, and its contents as articles owned by Ruth Wimpey and which were stolen at the time of the burglary. At the trial defendant, testifying in his own behalf, stated that he had purchased the challenged evidence from an unidentified "friend" on the day of the burglary. He also denied committing the burglary. Manifestly the trial court did not believe that testimony for it held that the state had proved, beyond a reasonable doubt, defendant's guilt.

Defendant relies to some extent on § 542.296, par. 6, quoted marginally.[9] That statute deals with a hearing on a motion to suppress filed by "a person aggrieved" by an unlawful seizure. At the motion hearing defendant offered no evidence that he

---

**9.** "6. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. The burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled."

was "a person aggrieved" nor was there evidence from the state so indicating.

Rule 24.05 reads: "Requests that evidence be suppressed shall be raised by motion before trial; however, the court may in its discretion entertain a motion to suppress evidence at any time during trial." Even if the testimony at the trial be considered as having been presented in support of a motion to suppress renewed at the trial, and if it be assumed, arguendo, that defendant would become the beneficiary of § 542.296, par. 6, the state successfully carried "the burden of going forward." Indeed it carried it not merely by a preponderance of the evidence but beyond a reasonable doubt.

The judgment is affirmed.

GREENE, P. J., and TITUS, J., concur.