STATE of Missouri, Respondent,

v.

Carvel NORFOLK, Appellant.

No. 71264.

Missouri Court of Appeals,
Eastern District,
Division One.

April 7, 1998.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Ann R. Littell, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Carvel Norfolk ("defendant"), appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis after he was found guilty of one count of possession of a controlled substance, RSMo section 195.202 (1994).[1]  We reverse and remand.

1. Defendant was acquitted of one count of pos- session of drug paraphernalia.

On October 19, 1995, at approximately 9:00 a.m., Officers Joseph Goforth and James Patterson were patrolling the area of 1800 Grand Avenue. The officers noticed a vehicle whose license plate was listed on the police department's "hot sheet."[2] The car's physical description also matched the description of the car which was reported stolen. The officers began following the car and radioed to the dispatcher to confirm the car was still listed as stolen. When the dispatcher responded affirmatively, the officers activated their emergency lights and stopped the car.

A woman, who was in fact the owner, was operating the vehicle, and defendant was sitting in the front passenger seat. Officer Goforth approached the occupants on the car's passenger side. As he approached, he saw defendant act as though he were hiding something. Goforth ordered defendant out of the car. When defendant did not comply with this first request, Goforth again commanded defendant exit the vehicle. As defendant did so, his wallet fell to the floorboard.

Goforth handcuffed defendant, placing him under arrest for riding in a stolen vehicle. During the subsequent pat down search, Goforth felt a long, hard, cylindrical object in defendant's pants pocket, which he thought might be a pocket knife. The object was a crack pipe. Defendant was then placed under arrest for possession of drug paraphernalia and read his Miranda rights. A search of defendant's jacket revealed another crack pipe, and five chunks of crack cocaine were found in defendant's wallet.

The state charged defendant with possession of a controlled substance and possession of drug paraphernalia. Defendant filed a motion to suppress the evidence on the grounds the search violated the Fourth Amendment. At trial, Officer Goforth described events leading up to the arrest as set forth above. He identified the rocks of crack cocaine and the crack pipes taken from defendant that morning. Defendant objected to the admission of the drugs and drug paraphernalia.

On cross-examination, Officer Goforth testified,

> [A h]ot sheet is a piece of paper with a list of stolen vehicles that we have in our computer. It's run off maybe three or four times a day. People report their vehicles stolen, it goes into our computer, and then you can put a certain command in and it'll print just those license plates and descriptions out on piece of paper.

A hot sheet can have "anywhere from [twenty] to [sixty] different vehicles listed" on it. Officer Goforth stated he picked one up at the beginning of the day and kept it with him while on patrol. He would look at whatever car would be passing by and check its license plate and description against the hot sheet.

Officer Goforth stated he noticed "[j]ust the license plate" on the car in which defendant was a passenger, and then observed the vehicle matched the description listed as well. He and his partner began following the vehicle and radioed the dispatcher to confirm the car was still reported as stolen. He explained,

> Well, occasionally people will recover their own vehicles and it will be canceled in the computer, but we have no way of knowing that unless, you know, we go to the computer every five minutes and print a new hot sheet. So we notify the dispatcher, she'll run it in her computer and tell us that it's still active.

Officer Goforth testified the owner of the stolen vehicle is not listed on the hot sheet, nor did the officers learn the owner's identity from the dispatcher. He relied on the information on the hot sheet and from the dispatcher in making the stop and subsequent arrest.

*The following exchange then took place:*

Q. Now is there any reason you had to believe that this hot sheet was reliable? In other words, the information, you don't know how it got on here; is that correct?

[PROSECUTOR]: Your Honor, I'm going to object as to this line of questioning.

---

**2.** A "hot sheet" is a list of vehicles which have been reported stolen. The hot sheet at issue here was not produced at trial and is not part of the record on appeal.

THE COURT: Overruled. You can answer that, Officer.

A. The only way that I know that that information gets on that is when the owners notify the police department that their vehicle has been stolen. And they are instructed that once it is recovered whether by them or by us it should be canceled.

Officer Goforth conceded sometimes vehicles are reported stolen when in fact the cars were borrowed or towed.

On redirect, the state did not elicit any further information about the hot sheet or how cars listed on it are reported stolen. Defendant renewed his motion to suppress, and it was argued before the court. The trial court then overruled the motion. After taking the case under submission, the court found defendant guilty of one count of possession of a controlled substance.

Defendant filed this appeal, asserting the trial court erred in overruling his motion to suppress the evidence seized as it was the fruit of an illegal investigatory stop, thus a violation of the Fourth Amendment. Specifically, defendant argues the police officers lacked reasonable suspicion to make an investigatory stop because there was insufficient evidence about the source of the information found on the hot sheet. We will affirm the judgment of the trial court so long as the evidence is sufficient to sustain its decision. *State v. Franklin,* 841 S.W.2d 639, 641 (Mo.banc 1992).

■ The Fourth Amendment of the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures. However, "[t]he Fourth Amendment is not offended when a law enforcement officer briefly stops a person if the officer has a reasonable suspicion, based upon specific and articulable facts, that the person was or is involved in criminal activity." *Id.; citing Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Likewise, an officer may briefly stop a moving vehicle in order to investigate when the officer has a reasonable suspicion, based on specific and articulable facts, the occupants are engaged in criminal activity. *Franklin,* 841 S.W.2d at 641; *citing United States v.*

*Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

■ While a stop must be based on a reasonable suspicion, the detaining officer need not always personally observe the facts giving rise to the reasonable suspicion. *Franklin,* 841 S.W.2d at 641. Rather, an officer may receive and rely on information from another officer in making a stop so long as it is shown the officer who disseminated the information had a reasonable suspicion which would allow him to have made the stop himself. *United States v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 681–82, 83 L.Ed.2d 604 (1985); *State v. Miller,* 894 S.W.2d 649, 652 (Mo.banc 1995).

In *Hensley,* the United States Supreme Court upheld a stop by an officer acting in reliance on a flyer issued by a neighboring police department, which indicated the defendant was wanted for questioning in connection with an aggravated robbery. 469 U.S. at 229, 105 S.Ct. at 680–81. The Court held if an officer makes a stop in objective reliance on information provided by another officer or law enforcement agency, the evidence found as a result of the stop is inadmissible if the officer or agency who broadcast the information lacked reasonable suspicion to make the stop. *Id.* at 232, 105 S.Ct. at 682. In *Hensley,* an officer with the department that issued the flyer testified he had spoken with a witness who claimed some peripheral involvement with the robbery in question, and who named the defendant as the driver of the getaway car. *Id.* at 223, 234, 105 S.Ct. at 677, 682. The District Court concluded the details surrounding the informant and her information established she was sufficiently reliable so as to create a reasonable suspicion in the mind of the officer, who then issued the flyer. *Id.*

Our state's Supreme Court subsequently adopted and applied the reasoning of *Hensley* in the cases of *Franklin* and *Miller.* In *Franklin,* a Kansas City police officer received a dispatch while on patrol one evening. 841 S.W.2d at 640. The dispatch indicated "party armed, occupying a black 1984 Pontiac Fiero in the area of 4200 East 60th Terrace." *Id.* The officer proceeded to the area, saw the suspect, and conducted a traffic

stop. *Id.* The stop produced no weapon, however, the defendant was arrested for failing to display a driver's license. *Id.* The subsequent search incident to arrest produced three marijuana cigarettes. *Id.* at 641. The trial court granted the defendant's motion to suppress the evidence and the state appealed.

The Missouri Supreme Court, in upholding the trial court's decision to suppress the evidence, found *Hensley* applied with equal force to radio dispatches as it did to written flyers. *Id.* at 643. The Court then applied the three-prong test created by *Hensley:* (1) did the dispatch objectively support the action taken by the officer; (2) was the dispatch issued on the basis of a reasonable suspicion that the person in question had been involved in a crime; and (3) was the stop that occurred any more intrusive than would have been permitted the officer issuing the dispatch or information. *Franklin,* 841 S.W.2d at 643–44; *citing Hensley,* 469 U.S. at 232, 105 S.Ct. at 682. The Court concluded the second prong of the test was not met as the state failed to produce any evidence showing the dispatch was issued on the basis of a reasonable suspicion, and as the detaining officer witnessed no independent facts giving rise to such suspicion. *Franklin,* 841 S.W.2d at 644. The dispatcher was not called to testify, nor did the record disclose the source of the information which led to the dispatch. *Id.* Therefore, the Court concluded, the detaining officer lacked reasonable suspicion to stop the car rendering the stop invalid. *Id.*

In *Miller,* detailed information concerning a street drug trafficking operation was passed from one officer, to a second officer, and then to a third officer who ultimately acted on the information and stopped the vehicle in question. 894 S.W.2d at 650. The defendant was the passenger in the vehicle and was arrested for possession of a controlled substance. *Id.* at 650–51. The defendant filed a motion to suppress which was denied at trial. *Id.* at 651. On appeal, the Court applied the three-prong test enumerated in *Hensley,* and concluded the state failed to meet its burden of proving the information passed from the first officer along to the

detaining officer was based on a reasonable suspicion. *Id.* at 653. The state produced no evidence concerning the origin of the tip other than the defendant's post-arrest statements that the informant was his ex-girlfriend. *Id.*

■ We find *Miller* and *Franklin* dispositive of the case before us. The state bears the burden of production with respect to evidence which served to form the basis of the original officer's reasonable suspicion that the occupants of a vehicle were involved in criminal activity. *Miller,* 894 S.W.2d at 653. Here, the officers relied on the information on the hot sheet and the dispatcher's confirmation in stopping the vehicle in which defendant was a passenger. However, the state produced no evidence regarding how the information that the car was reported stolen was first obtained by police. In other words, there was no evidence regarding the origin of the information on which the officers relied. Nor did the state offer evidence of an independent basis personally observed by the officers which would have given them a reasonable suspicion sufficient to justify the stop.

■ We agree " 'effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another, and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.' " *Hensley,* 469 U.S. at 231, 105 S.Ct. at 681–82 (citation omitted). However, where the information appears to originate with law enforcement personnel and the state uses the information to justify the stop, the state at trial must prove the facts which gave rise to the original suspicion. *Miller,* 894 S.W.2d at 653. As previously noted, the state offered no explanation as to how the information that the car was stolen reached the police. Officer Goforth's testimony, which was elicited by defense counsel, regarding "people" and "owners" who report their cars being stolen was insufficient to overcome the state's burden. Without more specific evidence regarding the origin of information contained on the hot

sheet, the trial court should have granted defendant's motion to suppress the evidence.

We do not hold police officers cannot rely on hot sheets to make traffic stops; the state may have avoided the suppression of the evidence had it called the proper witnesses to testify with respect to the origin of the information about the stolen car. *See id.* at 657. As noted by the Court in *Miller,*

> [t]here is a natural temptation to seek to avoid deciding this case on what may appear to be a technical slip-up by the prosecution. However, the prosecution's burden of proof at a suppression hearing is not a technicality; it plays a powerful and integral role in the effort to ensure the effectiveness of he Constitution's Fourth Amendment prohibition against unreasonable search and seizures.

*Id.* Here, the state simply failed to meet its burden of proof.

Accordingly, defendant's conviction is reversed. We remand the case to the trial court for disposition consistent with this opinion. *See id.*

GRIMM, P.J., and PUDLOWSI, J., concur.