

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| IN THE INTEREST OF M.A.S. | ) | No. ED111500 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| | ) | Cause No. 2222-JU00514 |
| | ) | |
| | ) | Honorable Barbara T. Peebles |
| | ) | |
| | ) | Filed: March 12, 2024 |

**Introduction**

Appellant M.A.S. appeals the judgment of the Circuit Court of the City of St. Louis, Juvenile Division, finding that he committed acts which would constitute the Class D felony of tampering in the first degree if committed by an adult. We affirm the judgment of the circuit court.

**Background**

On September 5, 2022, Victim discovered her vehicle, a blue 2018 Kia Optima with Illinois plates, missing from outside her apartment where she had last parked it and reported the vehicle as stolen. At trial, Victim testified that she had locked the car the night before and that she discovered broken glass where the vehicle had been parked. Victim testified that she had not given anyone permission to use or drive the vehicle.

On the morning of September 7, 2022, an officer assigned to the Anti-Crime Task Force within the St. Louis City Metropolitan Police Department received a communication from the Real Time Crime Center ("RTCC") about a stolen blue Kia Optima with Illinois plates traveling north on Union Blvd. at Delmar. The officer testified that the car had gone through a license plate recognition camera, which is connected to the REJIS[1] system to provide the RTCC with real-time location alerts on reported stolen vehicles. The officer explained that the RTCC had been alerted to the location of the Kia because it had been reported as stolen in the REJIS system. The officer testified that he immediately made his way to the area, which was nearby where he had been patrolling that morning.

Upon coming into contact with the vehicle, the officer determined that there was only one person in the car. After confirming that the car was the one identified by the RTCC and cross-referencing the Illinois license plate to a "hot sheet" containing a list of stolen vehicles that the officer had taped to his steering wheel, the officer immediately made a U-turn in order to follow the vehicle. The officer was in an unmarked police vehicle.

The officer testified that the Kia eventually came to a stop, and Appellant exited the vehicle and began to walk away. At that time, the officer exited his vehicle and detained Appellant without incident. The officer identified Appellant in the courtroom as the individual he observed exiting the car and whom he detained. The officer then put Appellant in the backseat of his police vehicle and drove the short distance back to the parked Kia. At that point, the officer ran the VIN which confirmed that it was the vehicle listed as "actively stolen." The officer testified that he then explained to Appellant that he was being detained because he had been seen

---

[1] The Regional Justice Information Service computer network (REJIS) is the product of a cooperative agreement between the City of St. Louis and St. Louis County that allows law enforcement agencies within the region to share information.

driving a stolen vehicle, at which point Appellant made a spontaneous statement that "he didn't steal it; he found it. He said, they're all over the place." The officer testified that he observed heavy damage to the ignition and steering column of the Kia, as well as a broken window.

Appellant was charged with tampering in the first degree, and a bench trial was held on February 14, 2023. Prior to trial, Appellant filed a motion to suppress evidence relating to his stop and arrest as a violation of his Fourth Amendment rights, claiming that the arresting officer lacked reasonable suspicion upon which to base the stop. At the request of the parties, the motion was taken with the case. At the close of all evidence, the circuit court denied Appellant's motion and found him guilty of acts which would constitute the Class D felony of tampering in the first degree if committed by an adult. This appeal follows.

**Standard of Review**

Juvenile proceedings are reviewed in the same manner as other court-tried cases. *Int. of D.E.W.*, 617 S.W.3d 514, 519–20 (Mo. App. E.D. 2021). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of evidence, or it erroneously declares or applies the law. *Interest of D.L.T.*, 673 S.W.3d 844, 848 (Mo. App. E.D. 2023).

"When reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Carrawell*, 481 S.W.3d 833, 837 (Mo. banc 2016) (quoting *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005)). "The Court defers to the trial court's determination of credibility and factual findings, inquiring only whether the decision is supported by substantial evidence, and it will be reversed only if [it is] clearly erroneous." *Id.* (quoting *State v. Goff*, 129 S.W.3d 857, 862 (Mo. banc

3

2004)). "By contrast, legal determinations of reasonable suspicion and probable cause are reviewed de novo." *State v. Grayson*, 336 S.W.3d 138, 142 (Mo. banc 2011).

**Discussion**

In his sole point on appeal, Appellant argues that the circuit court erred in denying his motion to suppress evidence obtained as a result of an unconstitutional stop and arrest because the State failed to prove there was reasonable suspicion upon which the arresting officer based the initial stop of Appellant. Specifically, Appellant argues that the arresting officer's reliance on a "hot sheet" to identify the stolen vehicle required the State to produce specific evidence relating to the origin of such information in order to prove that it was based on a reasonable suspicion. Appellant's motion was filed before trial, and the court agreed to take the motion with the case and issue its ruling on the matter at the conclusion of the trial.

The Fourth Amendment of the United States Constitution preserves the right of the people to be secure against unreasonable searches and seizures. Generally, a search or seizure is allowed only if the police have probable cause to believe the person has committed or is committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Fourth Amendment allows a *Terry* stop, which is a minimally intrusive form of seizure or "semi-arrest" that is lawful if the police officer has a reasonable suspicion supported by articulable facts that those stopped are engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). Police are allowed to conduct *Terry* stops of moving vehicles upon a reasonable suspicion that the occupants are involved in criminal activity. *United States v. Brignoni–Ponce*, 422 U.S. 873, 882 (1975).

When a law enforcement officer effectuates a *Terry* stop, he need not have personally observed facts amounting to reasonable suspicion provided he acted on information provided by another officer who is shown to have had reasonable suspicion to make the stop. *United States v.*

*Hensley*, 469 U.S. 221, 233 (1985). In *Hensley*, the Supreme Court created a three-part test that requires the following: (1) that the communication objectively supported the action taken by the officer; (2) that **the communication was issued on the basis of a reasonable suspicion** that the occupant of the vehicle had been involved in a crime; and (3) that the stop that in fact occurred was no more intrusive than would have been permitted the officer that originally communicated the information. *Id*. at 232-33 (emphasis added). The Court held, however, that if an officer makes a stop in objective reliance on information provided by another officer or law enforcement office, the evidence uncovered as a result of the stop is inadmissible if the police who *issued* the bulletin lacked a basis for reasonable suspicion to make the stop. *Id*. at 232.

In *State v. Franklin*, the Missouri Supreme Court held that the logical application of *Hensley* requires a finding that a police radio dispatch, flyer, or bulletin must be based upon reasonable suspicion if a stop initiated in reliance upon that information is to be justified under the Fourth Amendment. 841 S.W.2d 639, 643 (Mo. banc 1992). The Court found that because there was no evidence presented pertaining to the origin of the information in the dispatch relied upon to initiate the stop—as the state did not call the dispatcher to testify at the suppression hearing and the record was silent as to the source of the information that led to the police dispatch—the Court could not determine from the record whether the stop was based upon reasonable suspicion. *Id*. at 644.

In *State v. Miller*, the Missouri Supreme Court addressed a similar issue where the appellant was stopped based on information an officer obtained from an unknown source that a car identical to the one in which appellant was apprehended was in a particular area transporting controlled substances. 894 S.W.2d 649 (Mo. banc 1995). The Court stated that the mere fact that information came through a police dispatch does not provide a basis for finding reasonable

5

suspicion because it would render the the requirements of reasonable suspicion and probable cause meaningless as "police could simply filter a 'hunch' through a radio dispatch or cellular phone and have it come out reliable on the other end." *Id*. at 653. The *Miller* decision bases its analysis on the State's failure to call the officer alleged to have been the source of the information from which the other officers derived their reasonable suspicion, thereby rendering it impossible for the Court to determine how the officer knew or suspected the vehicle would be transporting narcotics. *Id*. at 654.

This Court addressed the application of *Hensley* and *Franklin* to "hot sheets" used by police to effectuate *Terry* stops in *State v. Norfolk*, 966 S.W.2d 364 (Mo. App. E.D. 1998). "[W]here the information appears to originate with law enforcement personnel and the state uses the information to justify the stop, the state at trial ***must prove the facts which gave rise to the original suspicion***." *Id*. at 367–68 (emphasis added). The Court determined that the state "offered no explanation as to how the information that the car was stolen reached the police," and the arresting officer's testimony vaguely referring to "people" and "owners" who report their cars being stolen was insufficient to overcome the state's burden. *Id.* The Court found that without more specific evidence regarding the origin of information contained on the hot sheet, the evidence should have been suppressed. *Id.*

Here, unlike *Norfolk*, the State proved the specific facts that gave rise to the original suspicion used to facilitate the stop of Appellant. Generally, to determine if reasonable suspicion exists, we must apply one of three standards:

> If a dispatch is based upon information provided by another police officer, the court looks to whether the collective information known to all officers involved in the stop amounted to reasonable suspicion. If the dispatch is based upon information obtained from an identified informant, courts examine whether the informant was known to the police to be reliable. If the information was obtained

6

> from an anonymous informant, the question is whether the police corroborated the details of the tip before making the stop.

*State v. Miller*, 894 S.W.2d 649, 652–53 (Mo. banc 1995). In the present case, the State adduced information pertaining to the origin and basis of the information in the form of Victim's testimony that she reported the vehicle stolen on the morning of September 5, 2022, after discovering it missing from where she had last parked it outside her apartment. Moreover, Victim's testimony that no other person had permission to drive her car supports her claim that the vehicle had been stolen. A victim of a crime is considered a reliable informant for establishing probable cause, even if such an individual's reliability is not previously established. *State v. Whorton*, 487 S.W.2d 865, 867 (Mo. banc 1972). While Appellant seemingly takes issue with the fact that the officer who took Victim's report did not also testify, the *Hensley* test only requires the state to prove the ***origin*** of the reasonable suspicion, which in this case was the Victim's report of her stolen vehicle. Simply put, Victim's testimony at trial that she reported her vehicle as stolen provided the original factual basis for reasonable suspicion to execute a permissible *Terry* stop of Appellant. *See Norfolk,* 966 S.W.2d at 367-68.

Most significantly noted, Appellant has failed to prove that he was prejudiced by the alleged error. Appellate courts review evidentiary rulings for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Hampton*, 661 S.W.3d 409, 417 (Mo. App. E.D. 2023); *State v. Tettamble*, 720 S.W.2d 741, 742 (Mo. App. E.D. 1986). In a bench trial, error in admitting evidence is generally not prejudicial unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence. *State v. Hein*, 553 S.W.3d 893, 898 (Mo. App. E.D. 2018) (citing *State v. Sladek*, 835 S.W.2d 308, 313 (Mo. banc 1992)); *see also State v. Taylor*, 504 S.W.3d 116, 122–23 (Mo. App. E.D. 2016). Upon appellate review, the court presumes the lower court did not give weight to

incompetent or erroneously admitted evidence. *Id*. (citing *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc. 2005).

Appellant's motion to suppress was generally applied to "any evidence obtained as a result of the stop and arrest" of Appellant, which would potentially include an alleged statement by Appellant, a photograph of Appellant following his arrest, and "any observations or evidence obtained as a result of that stop." However, at trial, defense counsel specifically objected only to the introduction of Appellant's spontaneous statement following his detainment and to a photo of Appellant sitting in the police vehicle following his arrest. Appellant has failed to extrapolate upon, both to the circuit court and to this Court, how such evidence was prejudicial to him or how the suppression of such evidence would have led to his acquittal. Indeed, Appellant was charged with tampering in the first-degree, which required a finding that he knowingly operated the automobile without the consent of the owner. Here, the arresting officer's testimony that he observed Appellant operating the vehicle satisfied the first element, while Victim's testimony established that Appellant did not have consent to operate the vehicle—the second element. As the vehicle did not belong to Appellant, he has no standing to contest, nor did he attempt to contest, any evidence relating to the car, including the arresting officer's confirmation of its VIN. *See State v. Nichols*, 628 S.W.2d 732 (Mo. App. S.D. 1982).

Therefore, because Appellant did not prove how the allegedly impermissible evidence was used to convict him or demonstrate how the circuit court relied on such evidence in its judgment, we find no reversible error. Point denied.

**Conclusion**

We affirm the decision of the circuit court.

_____
Renée D. Hardin-Tammons, J.

Kurt S. Odenwald, P.J., and
Michael E. Gardner, J., concur.